RAYMOND E. O'BRIEN *et al.*, Plaintiffs-Appellants, *v.* WILLIAM R. NOBLE *et al.*, Defendants.—(NEIL SCHURTER *et al.*, Defendants-Appellees.)

Fourth District    No. 17563

Opinion filed May 12, 1982.—Rehearing denied June 9, 1982.

Lawrence E. Johnson & Associates, of Champaign (Lawrence E. Johnson and Stephen N. Greenleaf, of counsel), for appellants.

Hatch, Blockman & McPheters, of Champaign (Brian L. McPheters, of counsel), for appellee Neil Schurter.

Reno, O'Byrne & Kepley, of Champaign (Glenn A. Stanko, of counsel), for appellees Carol Springer and Gary Crane.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs appeal from a judgment of the circuit court of Champaign County, sitting without a jury, in favor of all defendants in a suit against defendants Springer and Crane for negligent misrepresentation and against defendant Schurter for malpractice. We affirm.

The background of the controversy as revealed by the evidence arises out of the purchase by plaintiffs of certain real estate located in Champaign County. Defendant Crane is a real estate broker and defendant Springer is a broker employed by him. Crane placed an advertisement in a Champaign newspaper for certain property listed with him. It was a display advertisement with a picture of the premises and the Crane logotype, the significant language being as follows:

"FIVE ACRES

Exclusive area located South of Fisher—plenty of trees. Telephone and electricity available. Restricted to one house only. For further details and restrictions call [telephone number]."

Plaintiffs called the indicated telephone number and talked with defendant Springer. Later they went to the site to inspect the property. A second conversation took place during which plaintiff Kathleen O'Brien inquired about a number of things, including restrictions. Defendant Springer gave her an oral description of them together with a "restriction sheet" and a copy of a survey; she was also permitted to view a multiple listing sheet containing some additional general information. Afterwards Springer provided some additional information concerning restrictive covenants on the premises such as frontage and square footage requirements for houses and the use of propane tanks. At no time did plaintiffs make any inquiry concerning zoning.

The culmination was the execution of a form contract to purchase the premises signed by the plaintiffs on November 4, 1977, and by the sellers (defendants Noble, who have been dismissed from the case) on the same date. Plaintiffs were not represented by an attorney, although the name of a Champaign attorney appears on the instrument as being their counsel. Defendant Schurter's name appears as attorney for the sellers. The contract contains two provisions pertinent to the issues here which state:

"11. Subject to existing restrictive covenants, easements and zoning regulations, if any."

"13. THIS AGREEMENT WILL BECOME BINDING UPON EXECUTION BY THE SELLER."

A closing date was arranged for November 28, 1977, at a Champaign financial institution which was loaning plaintiffs a portion of the purchase price. Plaintiffs arrived, and, according to some of the testimony, were "distressed" to learn that the financial institution was not providing an attorney for them at the closing. At about the same time defendant Schurter arrived with his clients, the sellers. Some conversation ensued between Schurter and the plaintiffs; the evidence is unclear as to whether plaintiffs asked him to "represent" or to "help" them. After some hesitation, Schurter agreed to go over the closing statement with the plaintiffs and record their documents for them. Plaintiffs were aware that he was representing the sellers. Also present at the closing were defendant Springer and another person from her office, and an officer of the lending institution. All testimony concerning the closing indicated that the subject of zoning was never mentioned. The closing was accomplished; Schurter recorded the plaintiffs' deed for them and was paid a fee of $25 by them.

Subsequently plaintiffs learned that they could not obtain a building permit for a house on the premises because of insufficient frontage under the Champaign County zoning ordinance which became effective in October 1973. This was a developmental standard as distinguished from a permitted use. The property was in conformity insofar as a permitted use was concerned. Upon discovery of the problem, plaintiffs retained an attorney in August 1978; a petition for variance was filed in August 1979 and allowed in October 1979; plaintiffs' home was completed in May 1980.

Plaintiffs filed a multi-count complaint, naming the seller, Noble, as defendants and seeking various forms of relief against them, but as previously indicated, ultimately dismissed the suit as to them. Plaintiffs proceeded in damages against the brokers, Crane and Springer, as defendants, on a theory of negligent misrepresentation in that they failed to inform plaintiffs of the developmental restrictions in the zoning ordinance; similarly they proceeded against Schurter, the attorney, as defendant, on a theory of malpractice in that he failed likewise at the closing to inform them of the zoning matter. Since the theories are different, clarity demands that we consider them separately.

As to the doctrine of negligent misrepresentation, plaintiffs rely primarily on a British case decided by the House of Lords: *Hedley Byrne & Co. v. Heller & Partners, Ltd.* [1964] A.C. 465 and its Illinois progeny. In that case an advertising agency purchased advertisements for a business and assumed personal responsibility for the cost. The business subsequently became insolvent and the advertising agency sued the business' bank, alleging that the bank had been negligent in that it provided plain-

tiff's bank with erroneous financial data concerning the business. The House of Lords held that a negligent, though honest, misrepresentation, spoken or written, may give rise to a cause of action for damages for loss caused thereby, apart from any contract or fiduciary relationship, since law will imply a duty of care when a person seeking information from a party possessed of special skills trusts him to exercise due care, and that party knew or ought to have known that reliance was being placed on his skill and judgment. ([1964] A.C. 465, 486, 502, 514.) Since the bank, in providing the financial data, expressly disclaimed any responsibility therefor, this rule was held inapplicable to the defendant in the case, however.

The Illinois Supreme Court adopted the general rationale of *Hedley Byrne* in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656. There, a surveyor had made an erroneous survey, despite a guarantee of absolute accuracy contained in the plat of the survey. The court held that a third party, not in privity with the defendant surveyor, could recover damages against him on the basis of his negligent misrepresentation because of

"(1) The express, unrestricted and wholly voluntary 'absolute guarantee for accuracy' appearing on the face of the inaccurate plat;

(2) Defendant's knowledge that this plat would be used and relied on by others than the person ordering it, including plaintiffs;

(3) The fact that potential liability in this case is restricted to a comparatively small group, and that, ordinarily, only one member of that group will suffer loss;

(4) The absence of proof that copies of the corrected plat were delivered to anyone;

(5) The undesirability of requiring an innocent reliant party to carry the burden of a surveyor's professional mistakes;

(6) That recovery here by a reliant user whose ultimate use was foreseeable will promote cautionary techniques among surveyors." 43 Ill. 2d 54, 67-68, 250 N.E.2d 656, 663.

Some authorities have found liability under the doctrine in varying fact situations. In *McAffee v. Rockford Coca-Cola Bottling Co.* (1976), 40 Ill. App. 3d 521, 352 N.E.2d 50, defendant represented to plaintiff that he had a job waiting for him at the Coca-Cola company and in reliance thereon he quit the job he was then holding. In fact, there was no job at Coca-Cola, and the court found liability. In *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 214 N.E.2d 612, the defendant was an official of a corporation which led plaintiffs to believe that there were no outstanding mortgages on real estate which they were purchasing. In fact, the properties were encumbered. The court found alternative bases for liability: fraud and negligent misrepresentation.

Somewhat closer factually to the instant case, *Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 404 N.E.2d 1026, held the defendant not liable to the plaintiff in the sale of a business property when the defendant had represented that all the zoning "red tape" had been taken care of, and in fact it had not. The court commented that one is not entitled to rely upon a statement as to what the law is, since all men are presumed to know the law, and zoning matters are of public record and equally accessible to everyone. In *Lyons v. Christ Episcopal Church* (1979), 71 Ill. App. 3d 257, 389 N.E.2d 623, plaintiff sued the seller and the broker over a purchase of real estate. The broker's advertisement indicated that the property was connected to the sewer system, but, in fact, it was not. The court held that the broker had no duty to verify and corroborate the seller's representations unless he is in possession of facts which indicate that they are false. No such evidence was present in that case, and the court imposed no liability on the broker.

The synthesis of these authorities appears to be that liability will be found when the defendant misrepresents facts of which he possesses almost exclusive knowledge and the truth or falsity of which are not readily ascertainable by the plaintiff.

■■ As applied to the instant case, the facts concerning the zoning of the property were a matter of public record and readily available to the plaintiffs. There was no negligent misrepresentation by Springer. In fact, there was no representation at all, in so far as the record indicates, concerning zoning other than the provision in the contract which made the property and the sale subject to applicable zoning regulations. Furthermore, any representation by Springer concerning developmental standards under the Champaign County zoning ordinance would have constituted the unauthorized practice of law. No duty can arise out of a prohibited act. The trial court was correct in finding for Springer and Crane and entering judgment in their favor against the plaintiffs.

We turn next to the malpractice claim against Schurter. Plaintiffs' theory is that he failed to advise them of the zoning problem at the time of the closing and that this constituted malpractice.

■■ An attorney is liable for malpractice only when he fails to exercise a reasonable degree of skill, not when he makes an error in judgment; his conduct is to be viewed in the context of events at the time of the alleged malpractice, not in the light of subsequent developments. *Brainerd v. Kates* (1979), 68 Ill. App. 3d 781, 386 N.E.2d 586.

■■ Schurter produced as an expert witness in his behalf a prominent attorney from the Champaign area who practiced considerable real estate law and was an editor of the Code of Professional Responsibility published by the Illinois Institute of Continuing Legal Education. This witness stated in answer to a hypothetical question that Schurter's conduct con-

formed to the usual and customary practice of lawyers involved in real estate transactions in Champaign County. He further stated that it was not the custom of attorneys in Champaign County in conducting real estate closings to investigate either permitted uses or developmental standards under local zoning. We agree with the trial court that this testimony is dispositive of the malpractice claim.

The cases cited by plaintiffs turned on issues so remote from the instant case that they do not merit discussion here. Pursued to its logical extreme, plaintiffs' rationale would require a lawyer who had prepared a simple antenuptial agreement to explain to his clients the ramifications of the Illinois Marriage and Dissolution of Marriage Act, the Probate Act, the Internal Revenue Code, the Family Expense Statute, and perhaps even the Coroner's Act. To state the proposition is to demonstrate its absurdity.

The judgment of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS and LONDRIGAN, JJ., concur.