DISC JOCKEY REFERRAL NETWORK, LTD., *et al.*, Plaintiffs-Appellants, v. AMERITECH PUBLISHING OF ILLINOIS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—91—0854

Opinion filed May 26, 1992.—Rehearing denied July 10, 1992.

Jeffrey M. Goldberg & Associates, Ltd., of Chicago (Jeffrey M. Goldberg and James M. Geraghty, of counsel), for appellants.

Hopkins & Sutter, of Chicago (John L. Conlon and Kathleen M. Burch, of counsel), for appellees GTE Directories Sales Corporation and Central Telephone Company.

McDermott, Will & Emery, of Chicago, for appellee Reuben H. Donnelley Corporation.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Disc Jockey Referral Network, Ltd., appeals from an order of the circuit court, dismissing its complaint for failure to state a cause of action (Ill. Rev. Stat. 1989, ch. 110, par. 2—615).

We affirm.

Plaintiff operates a referral service for those engaged in providing disc jockeys in the Chicago metropolitan area. Defendants, Ameritech Publishing of Illinois, G.T.E. Directories Sales Corporation, G.T.E., the Reuben H. Donnelley Corporation, Illinois Bell and Central Telephone Company (collectively, defendants), are corporations which publish telephone listings.

Defendants publish regional telephone directories for seven geographical areas located in Chicago and its suburbs. Prior to 1988, the regional directories contained only alphabetical listings, more commonly referred to as the "white pages" (white page only directories). In 1988, defendants began publishing regional directories which included both white pages and listings arranged by product or service, known as the "yellow pages" (combined white and yellow page directories). Throughout the period in which defendants published the combined white and yellow page directories, defendants also continued to publish white page only directories. However, only residents of a particular region were given the combined white and yellow page directories. White page only directories were distributed to individuals requesting telephone books for regions other than their own.

Defendants used the following advertisement to announce their directory service for those seeking a business alphabetical listing:

"INTRODUCING ... DONNELLEY'S REGIONAL WIDE AREA CONCEPT!

In 1980, Donnelley published its FIRST Wide Area Directory, for Northwest Cook County.

Our goal was to assist our advertisers in reaching the Regional Wide Area Marketplace.

Recently, a Business Alphabetical Listing was also included.

Now, the COMPLETE Regional Wide Area Directory will be published—thanks to the inclusion of a Regional White Pages for Residential and Business Listing—along with the Regional Yellow Pages.

Users of the NEW directory will find it a handy, everyday phone book because of the Regional White Pages (plus there will be no need for Operator Assistance charges). It will provide advertisers with TOTAL DIRECTORY COVERAGE and help enormously in "targeting" your Local and Regional Markets!

AMERITECH PAGESPLUS

+

Donnelley Directory

SERVING *ALL* YOUR YELLOW PAGES NEEDS!"

(Emphasis in original)

Plaintiff, on behalf of itself as well as similarly situated individuals, filed a complaint against defendants, based on the above advertisement, sounding in three different legal theories. Counts I through III alleged a breach of contract action. Counts IV and V alleged violations of the Consumer Fraud and Deceptive Trade Practices Act (the Consumer Fraud Act or Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). Finally, counts VI through VIII alleged violations of the Uniform Deceptive Trade Practices Act (the Uniform Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 311 *et seq.*).

The counts setting forth the breach of contract action are based on allegations that plaintiff paid for yellow page listings which it did not receive. Specifically, plaintiff claimed that in 1987 it "contracted" with defendants for the purchase of "Total Directory Coverage" for yellow page advertising in the combined white and yellow page directories to be published in 1988, 1989, and 1990. Plaintiff alleged three counts sounding in breach of contract against defendants, with each count differing only as to the year in which the alleged conduct occurred. The gist of plaintiff's claim was that potential yellow page advertisers were not advised that their business listings would not be contained in all of the directories published by defendants in those

years by virtue of the fact that defendants continued to publish white page only directories. Alleging white page only directories comprised approximately 33% to 50% of defendants' directory publication effort, plaintiff claimed it was deprived of "Total Directory Coverage" as was advertised.

Plaintiff's allegations concerning the Consumer Fraud Act were based on defendants' failure to disclose that two or more different versions of each directory were to be distributed. Specifically, plaintiff alleged defendants' conduct violated section 2R of the Act. (Ill. Rev. Stat. 1989, ch. 121½, par. 262R.) That section requires sellers of yellow page advertising to disclose the number of directories distributed in the previous edition, the geographic area of distribution, the name of the publisher, and whether the publisher is affiliated with a telecommunications carrier.

Finally, plaintiff's allegations regarding the Uniform Act also were based on defendants' failure to disclose the number of directories per region to be distributed. Plaintiff also charged defendants with the failure to disclose the geographic region in which the directories containing yellow pages were to be distributed.

On February 14, 1991, defendants successfully moved to dismiss the complaint.

Courts are to construe pleadings liberally, with the view to do substantial justice between the parties. (*Keller v. State Farm Insurance Co.* (1989), 180 Ill. App. 3d 539, 536 N.E.2d 194.) Accordingly, no pleading is defective in substance if it contains facts which reasonably inform the opposite party of the nature of the charge to be answered. (*Keller*, 180 Ill. App. 3d at 546.) A motion to dismiss, pursuant to section 2—615 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—615), however, attacks the sufficiency of the complaint and should be decided solely upon the allegations the complaint sets forth. (*Perkins v. Collette* (1989), 179 Ill. App. 3d 852, 534 N.E.2d 1312; *Schnidt v. Henehan* (1986), 140 Ill. App. 3d 798, 489 N.E.2d 415.) The motion should be granted only if it is clear that plaintiff cannot prove any set of facts under the pleading which would entitle him to the relief requested. *Perkins*, 179 Ill. App. 3d at 856.

Plaintiff argues that its complaint adequately sets forth a cause of action for breach of contract. We disagree.

■ A complaint for breach of contract must allege the existence of a contract, a breach by defendant, performance of all conditions to be performed by plaintiff, and damages to plaintiff as a consequence. (*Interim Investment Corp. v. Palatine Service Corp.* (1985), 139 Ill. App. 3d 118, 487 N.E.2d 15; *Thilman & Co. v. Esposito* (1980), 87 Ill.

App. 3d 289, 408 N.E.2d 1014.) Where the action is premised on a contract which purportedly has been accepted orally, the plaintiff must specifically set forth the facts supporting that acceptance. *Pollack v. Marathon Oil Co.* (1976), 34 Ill. App. 3d 861, 341 N.E.2d 101.

■ During oral argument, plaintiff's counsel represented that the contract involved here was oral. However, plaintiff's complaint failed to contain specific allegations supporting that theory. Instead, plaintiff alleged generally that a contract existed. A bare allegation that a contract existed, however, is but a legal conclusion which may not be admitted as true by a motion to strike or dismiss. (*Pollack*, 34 Ill. App. 3d 861, 341 N.E.2d 101.) Therefore, merely to allege that a party "contracted" with another, as plaintiff has done here, does not suffice. (See *Pollack*, 34 Ill. App. 3d 861, 341 N.E.2d 101.) No information concerning the amount paid for the advertising or the expected circulation of the directories can be gleaned from the complaint. Plaintiff alludes to the Donnelley advertisement but fails to state whether the terms of that advertisement were incorporated into the alleged contract. Plaintiff also failed to allege what, if any, relationship existed between defendant Donnelley and the other defendants.

Plaintiff's complaint also fails to adequately state how it was damaged by defendants' purported breach of contract. Plaintiff claims defendants never advised it that only persons residing within a region would be given a directory with yellow pages, or that persons requesting regional directories for regions other than their own would receive a directory that did not contain yellow pages. Plaintiff, however, has not set out how these omissions damaged plaintiff but merely states that it did not receive the yellow page advertising for which it paid. We note that nowhere in the complaint is it alleged that defendants failed to deliver the combined white and yellow page directories to all subscribers in the region in which those directories were distributed. Nor does plaintiff's complaint allege that defendants failed to publish its listings at all.

Most importantly, plaintiff's allegations, taken in the light most favorable to plaintiff, afford no relief in a breach of contract action. Plaintiff admitted at oral argument that no representations were made to it regarding circulation figures. No promises were made to the effect that every regional book would contain a classified section. Simply put, plaintiff was not promised anything it did not receive.

■ Plaintiff also sought punitive damages for breach of contract. However, such damages are not recoverable for such actions. Punitive damages are recoverable only where plaintiff alleges, and later proves, that defendants committed a tort with "fraud, actual malice,

deliberate violence or oppression, or that defendant[s] act[ed] willfully or with such gross negligence as to indicate a wanton disregard of the rights of others." (*Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 186, 384 N.E.2d 353.) Plaintiff's complaint contains no such allegations.

■ The counts of plaintiff's complaint alleging violations of section 2R of the Consumer Fraud Act fair no better under similar analysis. Plaintiff argues that defendants deceived it by failing to disclose the number of directories to be distributed for a particular region. Section 2R, however, requires only the disclosure of the number of directories distributed in the previous edition. (See Ill. Rev. Stat. 1989, ch. 121½, par. 262R.) The failure to disclose future distribution numbers simply is not actionable under the Act. Plaintiff also charged defendants with the failure to disclose the geographic areas of distribution, in violation of section 2R. However, a close reading of plaintiff's complaint reveals that each defendant published directories for seven regional areas, each of which plaintiff specifically identified in its allegations. Plaintiff further alleged that it purchased yellow page advertising in each of the "aforementioned" directories. Based on this language, it is difficult to understand how defendants failed to advise plaintiff of the geographic area of distribution when plaintiff admits it purchased advertising for each of the regions.

■ The final counts of plaintiff's complaint alleging violations of the Uniform Act also fail to state sufficiently a cause of action. Plaintiff charged defendants with violating sections 2(9) and 2(12) of the Uniform Act, which, in part, provide:

"A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation he:

\* \* \*

(9) advertises goods or services with an intent not to sell them as advertised;

\* \* \*

(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding." (Ill. Rev. Stat. 1989, ch. 121½, par. 312.)

Plaintiff claimed that defendants sold advertising in the directory as "total directory coverage," yet, in actuality, only one-half to two-thirds of the directories contained yellow pages.

The Uniform Act was not intended to be a consumer protection statute but rather was intended to prohibit unfair competition. (*Chabraja v. Avis Rent A Car System, Inc.* (1989), 192 Ill. App. 3d 1074, 549 N.E.2d 872, *appeal denied* (1990), 131 Ill. 2d 558, 553 N.E.2d 394.) Accordingly, the Uniform Act does not provide a cause of action

for damages but does permit private suits for injunctive relief. (*Greenberg v. United Airlines* (1990), 206 Ill. App. 3d 40, 563 N.E.2d 1031, *appeal denied* (1991), 137 Ill. 2d 664, 571 N.E.2d 148.) Private suits for injunctive relief may be brought in situations where one competitor is harmed or may be harmed by the unfair trade practices of another. *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815.

Specifically, sections 2(9) and 2(12) address "bait and switch" practices where "a seller seeks to attract customers through advertising at low prices products which he does not intend to sell in more than nominal amounts. When prospective buyers respond[,] *** sale of the 'bait' is discouraged through various artifices ***." (Ill. Ann. Stat., ch. 121½, par. 312, at 253 (Smith-Hurd Supp. 1992).) No such allegations are set forth in plaintiff's complaint. As defendants note, plaintiff contends that defendants were obligated to distribute only combined white and yellow page directories as regional directories. However, no set of facts were alleged in the complaint to support this purported obligation.

■ Finally, plaintiff sought injunctive relief based on the Consumer Fraud Act. Under that statute, however, the State Attorney General is given sole power to obtain an injunction against a person engaged in, engaging in, or who is about to engage in an unlawful practice. (*Martin v. Eggert* (1988), 174 Ill. App. 3d 71, 77, 528 N.E.2d 386, *appeal denied* (1988), 123 Ill. 2d 559, 535 N.E.2d 403.) Plaintiff also requested injunctive relief under the Uniform Act. However, under that act, our courts have noted that a problem "inherent" in such consumer actions is the inability to allege facts indicating that the plaintiff is likely to be harmed. (*Brooks*, 47 Ill. App. 3d at 275.) This inability results because, ordinarily, the harm has already occurred. A suit for injunctive relief, therefore, is precluded. (*Brooks*, 47 Ill. App. 3d at 275.) Such a situation confronts plaintiff here. Although it asks that defendants be enjoined from distributing directories without yellow page advertising, plaintiff has not alleged that it is an entity likely to be harmed. Parenthetically, we note that because plaintiff purchased advertising in the 1988, 1989, and 1990 directories, it can no longer be harmed by the continued publication of directories in 1992 and beyond.

A motion to dismiss a complaint is within the sound discretion of the circuit court. (*Keller*, 180 Ill. App. 3d at 546.) Upon review, such a decision to dismiss should be affirmed only where no set of facts can be proven under the pleadings which would entitle plaintiff to relief. Amendments should be permitted unless it is clear that the defect in

the pleading is not curable by amendment. (*Miller v. Enslen* (1978), 60 Ill. App. 3d 865, 377 N.E.2d 282.) As noted above, no set of facts can be alleged by plaintiff which would entitle it to relief. The circuit court's order dismissing the cause with prejudice is affirmed.

Affirmed.

CAMPBELL and MANNING, JJ., concur.