RONALD RANDELS *et al.*, Plaintiffs-Appellants, v. BEST REAL ESTATE, INC., *et al.*, Defendants-Appellees.

Second District No. 2—92—1051

Opinion filed April 27, 1993.

Ashley S. Rose, of Ashley S. Rose, Ltd., of Wheaton, for appellants.

Leigh M. Rawson, of Brittain & Ketcham, P.C., of Elgin, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiffs, Merry Randels and Ronald Randels, brought an action arising from their purchase of residential real estate against defendants, Janice Donnell (Seller), the seller of the real estate, Best Real Estate, Inc. (Realtor), the brokerage firm which listed the real estate for sale, and Carol Tweedie (Broker), Realtor's sole proprietor.

Plaintiffs alleged that Seller, Broker and Realtor violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1991, ch. 121½, par. 261 *et seq.*). Plaintiffs also alleged common-law misrepresentation by Broker and Seller.

After a bench trial, the trial court granted judgment for defendants. Plaintiffs appeal from that judgment.

The primary issue on appeal is whether the trial court erred by failing to apply the correct case law with respect to the Consumer Fraud Act. Realtor and Broker have not filed an appellate brief. However, we will consider the merits of this appeal based on the rule announced in *First Capitol Mortgage Corp. v. Talandis Construction Corp.* (1976), 63 Ill. 2d 128.

The facts are generally not in dispute. Seller was the owner of certain residential real estate commonly known as 821 Royal Lane, West Dundee, Illinois (the property). The property was improved with a single-family residence with a septic system. On November 4, 1988, Seller listed the property for sale with Realtor through its sales agent, Maggie Schaaf (Broker's Agent).

Before listing the property for sale, Seller had seen a local newspaper article which indicated that the owner of the property would be required to disconnect the property's septic system and connect the property's waste water system to the municipal sewer system within five years, but that the hookup fee would be waived. Seller told Broker's Agent about the newspaper article. Seller testified that she gave Broker's Agent this information because she wanted to be sure that prospective buyers of the property would be made aware of the hookup requirement. Seller also asked Broker's Agent to check with

village authorities and find out if the waiver of the hookup fee would apply to new owners.

A Village of West Dundee ordinance (the ordinance) mandated the hookup of residential sewer systems with municipal sewers at a property owner's expense. Pursuant to the ordinance, the village required the owner of the property to connect the property's sewage system to the public sewage system by October 1, 1991.

Broker and Broker's Agent informed the first potential buyers of the property of the hookup requirement. On November 20, 1988, Harry and Jane Clark submitted a written offer to purchase the property through Broker's Agent and Realtor. The Clarks did not close on the property because they were unable to sell their home before the scheduled closing. The Clarks subsequently wrote a letter which was admitted into evidence in this trial. The letter indicated that both Broker and Broker's Agent had informed them of the hookup requirement, that the hookup fee had been waived, and that they should contact the Village of West Dundee for further information.

On January 10, 1989, plaintiffs submitted an offer to Seller through Realtor to buy the property for $86,750. The listed price for the property was $94,500. Plaintiffs intended to purchase the property as an investment. Seller accepted the offer. Plaintiffs planned to refurbish the residence and resell the property for a profit within six months. Plaintiffs had made an initial offer for the property of $79,000. With their initial offer, plaintiffs submitted a written list of 14 repairs which they asserted needed to be made to the property and justified the relatively low offer price.

At the time plaintiffs made their offers, Merry Randels was employed as a licensed real estate agent and had been so employed for about eight months. Without contacting Realtor, Merry Randels found a listing for the property in a Multiple Listing Service book and obtained a computer listing for the property. The computer listing contained, *inter alia*, the following information: "city sewer available" and, on the same line, "Assmt NOT AVAIL."

On several occasions Merry Randels used her status as a real estate agent to "sign out" the key to the property and, accompanied by her husband, "show" the property to herself and her husband. Neither Broker nor Broker's Agent was present when plaintiffs visited the property. Merry Randels wrote the contract offer herself and submitted it to Seller through Realtor. Plaintiffs never communicated directly with Seller in any way. Plaintiffs submitted the contract to Broker's Agent without any conversation or inquiry about the property.

Neither Broker nor Broker's Agent made representations of any kind to the plaintiffs relating to the septic system. Broker's only conversation with either plaintiff in regard to the substance of the contract, other than negotiating an offering price acceptable to Seller, related to Broker's concern that Merry Randels be shown on the contract as a real estate agent. Broker testified that she discussed this matter with Merry Randels because ethical considerations require that a buyer who receives a commission as an agent in a real estate transaction must be shown on the contract. Merry Randels received a commission for the sale of the property as the selling agent.

At the time of the closing, plaintiffs were unaware of the ordinance and the hookup requirement. Merry Randels testified that plaintiffs did not make inquiries of any kind about the septic system or availability of the municipal sewer system because plaintiffs were not concerned about such details. Plaintiffs were familiar with septic systems because their own home had a septic system. Ronald Randels testified that he had inspected the septic system on the property during one of plaintiffs' visits to the property.

Shortly after closing on the property, plaintiffs learned of the ordinance requiring the hookup to the public sewer system. Plaintiffs testified that they would not have purchased the property if they had known of the hookup requirement because such an endeavor was beyond the scope of the type of repairs they anticipated making before selling the property for a profit.

At trial, plaintiffs' expert witness opined that a real estate sales person had a duty to disclose a mandatory sewer system hookup requirement to a prospective buyer of real estate. The expert also opined that such information is material to making an offer to purchase real estate.

In November 1991, nearly three years after plaintiffs closed on the property, plaintiffs paid a contractor to disconnect the property's septic system and hook up the property's sewer system to the village's sewer system. Plaintiffs claim damages for the cost of the sewer hookup and related costs such as those for relandscaping. Plaintiffs also claim damages for: the difference between what they paid for the property and what they would have offered if they had known about the hookup requirement, the mortgage payments they made since buying the property, the real estate taxes during that period, maintenance costs incurred since owning the property, and legal fees.

In a post-trial order, the trial court granted judgment in favor of all defendants. The trial court specifically found that Seller was not directly liable to plaintiffs because the Consumer Fraud Act did not

apply to Seller and because Seller had no direct contact with and made no representations to plaintiffs. The trial court also found that the silence of Realtor and Broker with respect to the ordinance requiring the sewer hookup "did not mislead or suggest that factually the ordinances had been complied with" and that "the state of the law was public knowledge available equally to the plaintiffs." The trial court explicitly relied on two cases: *O'Brien v. Noble* (1982), 106 Ill. App. 3d 126, and *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684.

Plaintiffs appeal from the trial court order. Plaintiffs argue that the trial court erred when it applied *O'Brien* and *City of Aurora* and that defendants are liable under the rules set forth in *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329.

■ Plaintiffs first allege that Seller, Realtor, and Broker violated the Consumer Fraud Act. Section 2 of the Consumer Fraud Act protects consumers, including prospective purchasers of real estate (see, *e.g., Beard v. Gress* (1980), 90 Ill. App. 3d 622, 627), against deceptive acts or practices. (Ill. Rev. Stat. 1991, ch. 121½, par. 262.) Under the Consumer Fraud Act, a deceptive act or practice includes "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." Ill. Rev. Stat. 1991, ch. 121½, par. 262.

The legislature clearly mandated that Illinois courts should liberally construe and broadly apply the Consumer Fraud Act in order to eradicate all forms of deceptive and unfair business practices. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 495.) The Consumer Fraud Act expands a consumer's rights under the common law, and a plaintiff can recover for innocent misrepresentations or omissions. *Duhl,* 102 Ill. App. 3d at 495.

■ A plaintiff alleging Consumer Fraud Act violations does not have to show actual reliance on the deceptive acts or that the defendant committed the deceptive acts in bad faith. (*Munjal v. Baird & Warner, Inc.* (1985), 138 Ill. App. 3d 172, 182-83.) However, a plaintiff must show that the deceptive act related to a material fact. (Ill. Rev. Stat. 1991, ch. 121½, par. 262; *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 565.) A deceptive representation or omission of law generally does not constitute a violation of the Consumer Fraud Act because both parties are presumed to be equally capable of knowing and interpreting the law. *Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 1135.

Plaintiffs charged that Seller, Realtor and Broker violated the Consumer Fraud Act by a deceptive act of omission when they failed to inform plaintiffs of the ordinance requiring the sewer hookup. The question before us is whether the omission was one of material fact or law.

Plaintiffs contend that the omission was one of material fact and rely on *Kinsey v. Scott* (1984), 124 Ill. App. 3d 329, for authority. In *Kinsey*, the owner of an apartment building had constructed a fifth apartment in the building without obtaining a permit and replied to a potential buyer's inquiries that there was nothing wrong with the building and that the building conformed to municipal building codes. (*Kinsey*, 124 Ill. App. 3d at 333.) The *Kinsey* court held that the owner's misrepresentations were statements of material fact. 124 Ill. App. 3d at 338.

Defendants contend that the nondisclosure of the ordinance in this case was an omission of law and therefore was not a violation of the Consumer Fraud Act. Like the trial court, defendants rely on *O'Brien v. Noble* (1982), 106 Ill. App. 3d 126, and *City of Aurora v. Green* (1984), 126 Ill. App. 3d 684.

In *O'Brien*, buyers of land which was advertised as appropriate for a house did not inquire of real estate brokers involved in the transaction as to zoning restrictions on the land and only discovered after closing that they could not build a house on the land because of insufficient frontage under zoning ordinances. (*O'Brien*, 106 Ill. App. 3d at 127.) Buyers brought a negligent misrepresentation action against the real estate brokers for failure to inform buyers of developmental restrictions in the zoning ordinances. The *O'Brien* court noted that zoning ordinances are a matter of public record and were readily available to the buyers and affirmed the trial court judgment in favor of the brokers. 106 Ill. App. 3d at 130.

In *City of Aurora*, the owners of an apartment building illegally converted the building to five units although zoning ordinances limited apartment buildings to two residential units. (*City of Aurora*, 126 Ill. App. 3d at 685.) After listing and advertising the building as a five-unit building, the owners and their real estate agents allegedly represented to potential buyers that the building could be used under the zoning ordinance as a five-unit building. (126 Ill. App. 3d at 685.) The court determined that, under either the Consumer Fraud Act or an action for common-law fraud, the case turned on whether the representations were of law or fact. (126 Ill. App. 3d at 689.) The *City of Aurora* court concluded that the representations were of law and therefore were not actionable under either the Consumer Fraud Act

or a common-law fraud theory. (126 Ill. App. 3d at 687.) The court also held that *Kinsey* was distinguishable on its facts. 126 Ill. App. 3d at 689.

This court reconciled several cases, including the above cases, which involved the fact or law determination in *Perkins v. Collette* (1989), 179 Ill. App. 3d 852. The *Perkins* court concluded that "[t]he primary factor which distinguishes [the cases] is whether the seller's misrepresentations could have been discovered merely by reviewing applicable zoning or building ordinances." *Perkins*, 179 Ill. App. 3d at 859.

■■ Thus, the analytical focus in cases such as the instant case, which involve a determination of whether an alleged misrepresentation or omission was one of fact or law, has evolved beyond a strict fact versus law dichotomy. (*Gilmore v. Kowalkiewicz* (1992), 234 Ill. App. 3d 522, 529.) Under this analysis, the key question is whether a defendant's misrepresentations or omissions were discoverable through the exercise of ordinary prudence by the plaintiff, and a finding of liability is made when the defendant misrepresents or omits facts of which he possesses almost exclusive knowledge the truth or falsity of which is not readily ascertainable by the plaintiff. *Stichauf v. Cermak Road Realty* (1992), 236 Ill. App. 3d 557, 568.

■■ Applying these principles to this case, we find no violation of the Consumer Fraud Act. The village ordinance requiring the sewer hookup was a matter of public knowledge, and the ordinance plainly sets out the circumstances under which property owners were required to hook up to public sewers at their expense. Plaintiffs knew the property had a septic system, and a simple review of the applicable village ordinances would have put the plaintiffs on notice that the hookup was required. The computer listing, which the plaintiffs obtained on their own, indicated that city sewers were available and that a related assessment was possible. However, plaintiffs did not inquire about the septic system, sewer availability, or possible assessments. In fact, plaintiffs made few, if any, inquiries about the property they bought. One of the plaintiffs, a licensed real estate agent who received a commission for the sale of the property, essentially showed the property to herself and the other plaintiff. Under these circumstances, we conclude that defendants' failure to disclose the ordinance was an omission of law readily discoverable by plaintiffs and therefore did not violate the Consumer Fraud Act because the omission was not of a material fact. Accordingly, the trial court was correct in its judgment that none of the defendants violated the Consumer Fraud Act.

Plaintiffs also alleged common-law misrepresentation by Seller and Broker. One of the elements necessary to support an action for misrepresentation is a false statement of material fact. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 286.) For the same reasons we concluded above that the alleged omissions were not omissions of material fact, we conclude that the alleged misrepresentations were not misrepresentations of material fact. Thus plaintiffs failed to prove their allegations of common-law misrepresentation against Seller or Broker. Accordingly, we find that the trial court was correct in its judgment that there was no misrepresentation by either Seller or Broker.

Based on the foregoing, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

WOODWARD and BOWMAN, JJ., concur.