2019 IL App (1st) 181135

No. 1-18-1135

Opinion filed May 14, 2019

Second Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| TOM EDSON, an Individual; and CHESTNUT INVESTMENT 1, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KELLI A. FOGARTY, an Individual; DEAN N. FUGATE, an Individual; FOGARTY & FUGATE, LLP, an Illinois Limited Liability Partnership; DAVID HORWICH, an Individual; and PRUDENTIAL RUBLOFF, LLC, an Illinois Limited Liability Corporation, | ) ) ) ) ) ) | No. 14 L 10633 |
| | ) | |
| Defendants | ) ) | The Honorable Brigid Mary McGrath, |
| (David Horwich and Prudential Rubloff, LLC, Defendants-Appellees). | ) ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justices Lavin and Pucinski concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant David Horwich, a real estate broker, listed space in a condominium building as zoned B1-3, a nonexistent, supposedly commercial classification. Horwich told plaintiff Tom Edson, who planned to purchase and then lease the space to a grocer, that it could host a grocery

store. After Edson purchased the space, he learned the space had been zoned residential, and not for commercial uses. Edson sued Horwich and his employer, Prudential Rubloff, LLC (collectively, Horwich), alleging fraud, negligent misrepresentation, and violation of both the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2016)) and the Real Estate License Act of 2000 (Real Estate License Act) (225 ILCS 454/1-1 *et seq.* (West 2016)).

¶ 2        The trial court concluded that Edson had no right to rely on the misrepresentations and granted Horwich's motion for summary judgment on all claims. The trial court also granted Horwich's motion to bar late damages disclosure by Edson.

¶ 3        We reverse the entry of summary judgment on the Consumer Fraud Act and Real Estate License Act claims, as the trial court incorrectly held that the claims require proof of reliance. We also reverse the entry of summary judgment on the negligent misrepresentation and common law fraud claims because Horwich made material misrepresentations of fact, and not of law. Lastly, Edson may ask the trial court to reconsider its interlocutory order barring his damages evidence.

¶ 4                                Background

¶ 5        David Horwich, a broker for Prudential Rubloff, LLC, listed for sale a below grade-level commercial unit at the Plaza De Witt, a condominium building. Before the listing, a Stop & Shop convenience grocery operated there.

¶ 6        Plaintiff Tom Edson, a real estate investor and developer, saw the Multiple Listing Service (MLS) listing the space as "[p]erfect for grocery, Medical Clinic, Fitness Center, Restaurant/Bar, Office." According to the MLS listing: "Former location of Stop & Shop

Grocery. Over 5000 SF lower Level commercial space in Streeterville with electrical and plumbing systems already in place. Space has private entrance from Dewitt St."

¶ 7        Horwich created advertising materials by looking at old MLS listings of the space. The older listings reflected "B1" zoning. Horwich looked at a Chicago zoning map to ascertain the zoning. In his deposition, Horwich testified there was no way of determining the zoning because the zoning map showed the zoning for the entire building, not the below grade-level commercial space. When creating the new MLS listing, Horwich added "-3" to the "B1" zoning.

¶ 8        Edson saw the listing and contacted Horwich for more information. Edson told Horwich he wanted to purchase the space and, in turn, rent it to a grocer or other commercial tenant. Horwich met with Edson and Edson's father for a tour. During the tour, they saw refrigerators and other fixtures left from the Stop & Shop. Horwich told Edson Stop & Shop had been there for over 30 years and it has been vacant since Stop & Shop closed. Edson testified that Horwich told him the space would be "great for a grocery store" due to its layout.

¶ 9        After the tour, Edson contacted Jerry Bockwinkel, an experienced grocer. Bockwinkel expressed interest, and he and Edson toured the space with Horwich. According to Edson, again, Horwich told Edson that the space "would be a great grocery store."

¶ 10       In December 2012, the owner accepted Edson's $600,000 offer. During the attorney review period, the parties amended the contract to allow Edson to determine whether the condominium association would allow Bockwinkel to operate a grocery store. As a part of his lease conditions, Bockwinkel wanted an elevator and signage installed. The sale closed without the association having approved these requirements, and the deal with Bockwinkel fell through.

¶ 11 Later, Edson began negotiations with Club Barks, a dog grooming business. Club Barks's real estate broker told Edson the space was zoned DR-10, a residential use classification. Because of the zoning, Club Barks did not enter into a lease.

¶ 12 After Edson learned the true zoning, he contacted the alderman's office and discussed rezoning the space or the building. The alderman advised Edson the zoning could be changed if the condominium association approved the tenant. The association never gave its approval, so eventually Edson stopped paying his condominium assessments. After a judgment of foreclosure, he lost title to the space.

¶ 13 Edson sued Horwich individually and his employer, alleging fraud, negligent misrepresentation, and violations of the Consumer Fraud Act and the Real Estate License Act. Horwich moved for summary judgment. The trial court granted summary judgment, noting that "[t]he consumer fraud and the negligent misrepresentation and even the Real Estate Licensing Act all require that there be reasonable reliance."

¶ 14 The trial court also heard Horwich's motion to bar late disclosures under Illinois Supreme Court Rule 219(c) (eff. July 1, 2002). Fifty-nine days before trial, Edson disclosed a compilation of 135 items of damages that he intended to use at trial, only 9 of which had been disclosed earlier.

¶ 15 Horwich argued that Edson's disclosure of 126 new damage items—including utility bills, association fees, and insurance—was untimely and too close to trial. Horwich further argued that Edson has had access to the information well in advance of the deadline for disclosure. The trial court granted Horwich's motion to bar the late disclosure.

¶ 16 Edson argues (i) the trial court incorrectly added an element of reliance to the claims under the Consumer Fraud Act and the Real Estate License Act, (ii) the trial court improperly

resolved triable issues of fact, (iii) Horwich owed him duties as a customer under the Real Estate License Act, and (iv) Edson's late disclosures should no longer be excluded. Edson asks that we reverse the trial court's grant of summary judgment and, on remand for trial, allow the damage items to be introduced.

¶ 17                                                   Analysis

¶ 18        Summary judgment means the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). Summary judgment should be denied where material facts are in dispute or where "reasonable persons might draw different inferences from the undisputed facts." *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). We review an order granting summary judgment *de novo*. *Id.*

¶ 19                                             Consumer Fraud Act

¶ 20        Edson argues that in granting summary judgment, the trial court erred by adding reliance as an element of a claim for Consumer Fraud Act. 815 ILCS 505/2 (West 2016). Under the act, plaintiff must prove "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002); see *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 938 (2003) (Under the act, plaintiff does not have to show he or she relied on defendant's actions). Nowhere does the act contain a requirement for reliance in misrepresentation cases. Horwich concedes as much in his brief and at oral argument.

¶ 21                            Misrepresentation of Fact or of Law

¶ 22        Horwich argues that even if the trial court erred in finding that Edson needed to show

reliance, we should affirm because misrepresentations about zoning involve statements of law,

on which Edson could not rely. Horwich contends that all parties had equal ability to know and

interpret the zoning, which gives rise to an issue of law. Horwich mainly relies on *Hamming v.*

*Murphy*, 83 Ill. App. 3d 1130, 1135 (1980), and *Randels v. Best Real Estate, Inc.*, 243 Ill. App.

3d 801 (1993).

¶ 23        The appellate court in *Hamming* charged the plaintiff with the knowledge of the

applicable zoning ordinances and the permitted uses. *Hamming*, 83 Ill. App. 3d at 1135. The

court determined that the existing zoning was a matter of public record, and plaintiff could not

reasonably rely on contrary representations by defendant. *Id.*

¶ 24        Defendant had sold plaintiff lakefront property that included a four-unit apartment

building, two efficiency apartments, docks, a boat house, a beach, and a fast-food restaurant. *Id.*

at 1132. During negotiations, defendant said she took care of "all zoning 'red tape' " to construct

apartments above the boathouse. *Id.* After entering an installment contract, plaintiff uncovered

several defects and sued to rescind the contract, alleging defendant made numerous

misrepresentations including about permitted uses under the existing zoning. *Id.* The trial court

entered judgment for defendant. *Id.* at 1133. The appellate court affirmed—plaintiff did not have

the right to rely on defendant's misrepresentations. *Id.* at 1135. The court ruled that the existing

zoning and the procedures to apply for either a variance or a permit constituted matters of public

record equally accessible by both parties. *Id.*

¶ 25        A failure to disclose a village ordinance of public record resulted in a judgment for

defendant in *Randels v. Best Real Estate*. *Randels*, 243 Ill. App. 3d at 802. There, the broker and

the broker's agent had informed potential buyers about a sewer hookup requirement, but the deal fell through. *Id.* at 803. Then plaintiffs, a licensed real estate agent and her husband, pulled the MLS listing and toured the property multiple times on their own, without contacting the seller, relator, or broker. *Id.* Plaintiffs then wrote the contract offer and submitted the contract to the broker's agent without discussing the property. *Id.* The broker and the broker's agent made no representations to plaintiffs about the sewer hookup requirement. *Id.* at 803-04. Plaintiffs knew about a septic system on the property but did not know about the ordinance and never made inquiries. *Id.* at 807. When plaintiffs learned of the requirement, they sued the broker and the broker's agent, alleging violation of the Consumer Fraud Act and common law misrepresentation. *Id.* at 802.

¶ 26        After a bench trial, the trial court granted judgment for defendants. *Id.* The appellate court affirmed, holding that the ordinance was public knowledge and plainly set out when it applied. *Id.* at 807. Plaintiffs knew the property had a septic system, and a simple review of the applicable village ordinances would have put them on notice about the hookup requirement. *Id.*

¶ 27        Horwich contends that, as in *Hamming* and *Randels*, his representations about zoning were matters of public record, equally accessible to all. Accordingly, they were nonactionable representations of law on which Edson had no right to rely.

¶ 28        We disagree. The cases Edson's relies on—particularly *Kinsey v. Scott*, 124 Ill. App. 3d 329, 333 (1984)—are more closely analogous to the facts before us.

¶ 29        In *Kinsey*, the seller made a misrepresentation of fact that the buyer could not have discovered through ordinary prudence. The appellate court held that a seller's misrepresentation involved an issue of fact rather than law because the buyer could not have discovered the fact using "ordinary prudence." *Id.* at 338-39. The buyer purchased a five-unit apartment building. *Id.*

at 332. The building originally contained four apartments, until the owner converted the basement into a fifth apartment, without obtaining a building permit. *Id.* The seller listed the apartment building as a five-unit building. *Id.* at 333. The buyer twice inspected the five units, and the seller never disclosed that he renovated the basement unit without a building permit. *Id.* at 333-34.

¶ 30    The buyer rented out the basement apartment from the purchase date until August 28, 1981, when the city notified her of housing and building code violations. *Id.* at 334. After a bench trial, the trial court awarded damages to the plaintiff for the fraudulent misrepresentations. *Id.* at 331. The appellate court affirmed, finding that the seller represented a five-unit apartment building, even though he knew the building permit allowed for only four units. *Id.* at 339. Based on the facts known to the seller, this statement was factually untrue. *Id.* The seller "vouch[ed] for the proper construction of all five units in his position as builder and owner," a misrepresentation of fact. *Id.* Further, nothing in the record indicated the buyer would have discovered the truth by exercising ordinary prudence. *Id.* at 338.

¶ 31    Similarly, in *Tan v. Boyke*, 156 Ill. App. 3d 49, 57 (1987), a zoning violation was not discernible by a "simple review" of the ordinance. The defendant seller sold two apartment buildings that had more apartment units than the construction permit allowed. *Id.* at 52-53. Although the defendant knew the buildings violated the zoning ordinances, he never told the plaintiff. *Id.* The only way the plaintiff could discover the violations was by obtaining and reviewing the plat survey, calculating the unit densities, and comparing the findings to the zoning ordinances. *Id.* at 57. The trial court held that the defendant committed both intentional and negligent misrepresentation and violated the Consumer Fraud Act. *Id.* at 52. The appellate court affirmed, finding that without some indication that the buildings had been illegally constructed, a

reasonably prudent purchaser likely would not "have undertaken so extensive of an analysis of the ordinance." *Id.* at 58. Because a simple review of zoning ordinances would not have revealed the zoning violations and the defendant knew about them, the defendant made misrepresentations of fact. See *id.*

¶ 32    Likewise, in *Perkins v. Collette*, 179 Ill. App. 3d 852, 859 (1989), a plaintiff's right to rely on a seller's misrepresentation regarding zoning turned on whether the plaintiff could have discovered the misrepresentation merely by reviewing the zoning ordinances. In *Perkins*, the buyers met with an agent and told him they wanted to purchase a vacant lot to build a home. *Id.* at 854. The agent showed the buyers a vacant lot that he owned. *Id.* During the tour, the agent told the buyers "the lot was a suitable place to build a home." *Id.* After the closing, the buyers asked the agent about obtaining a building permit. *Id.* at 854-55. The agent told the buyers they would have no problems. *Id.* at 855. When the buyers applied for a building permit, the county told them the agent had sought and been denied an application. *Id.* The county also told the buyers the county would deny their application as well. *Id.*

¶ 33    The buyers sued the agent, alleging violation of the Consumer Fraud Act and seeking to rescind the contract. The trial court granted the motion to dismiss. *Id.* The appellate court reversed. *Id.* at 860. The court held that the primary factor distinguishing this case—as well as *Kinsey* and *Tan*—from *Hamming* "is whether the seller's misrepresentations could have been discovered merely by reviewing applicable zoning or building ordinances." *Id.* at 859. The appellate court could not determine whether the buyers would have discovered the misrepresentations merely by reviewing the zoning ordinances, so it reversed the dismissal and remanded. *Id.*

¶ 34    Likewise, in *Gilmore v. Kowalkiewicz*, 234 Ill. App. 3d 522, 530 (1992), a buyer had a right to rely on statements about zoning when the misrepresentations could not be discovered by merely reviewing the zoning ordinances. The buyers saw a "for sale" sign on a house that also served as a chiropractic office. *Id.* at 523. While touring the home, the buyer asked the realtor if he could use the office space as a dental office. *Id.* at 524. The realtor assured the buyer he could. *Id.* After the tour, the realtor gave the buyer a listing sheet describing the home's features, including an office that could be used by a "dentist." *Id.* During a second visit, the realtor described how the buyer could use the office for his dental practice. *Id.* During these visits, neither party mentioned the specific local zoning laws or the property's legally permitted uses. *Id.* After purchasing the home and setting up a dental practice, the county informed the buyer that he was in violation of the zoning ordinance. *Id.* The buyer sued the realtor alleging fraud, violation of the Consumer Fraud Act and negligent misrepresentation. *Id.* at 525. The trial court granted the defendants' motion for summary judgment, ruling the defendant made a misrepresentation of law, and not fact. *Id.*

¶ 35    The appellate court reversed. *Id.* at 531. Applying the rationale in *Kinsey*, *Tan*, and *Perkins*, the court stated the key issue in these cases as "whether the misrepresentation could have been discovered *merely* by reviewing the applicable zoning ordinances and building codes." (Emphasis in original.) *Id.* at 529. At one time, the zoning ordinance allowed a dental office in a residence. *Id.* But before the buyers noticed the for sale sign, the county had amended the zoning ordinance, making it vague as to its use as a dental office. *Id.* at 530. Because of this, the buyers could not discover by a mere review of the ordinance whether the county permitted a dental practice. *Id.* The court determined that the realtor made misrepresentations of fact. *Id.*

¶ 36    Edson's situation follows those of the plaintiffs in *Kinsey*, *Tan*, *Perkins*, and *Gilmore*. Edson could not have discovered the zoning through ordinary prudence before buying the space. Horwich testified that he tried but was unable to determine the zoning by looking at the zoning map. Because the zoning map showed the zoning for the entire condominium building, and not specifically for the commercial space, Horwich believed there "was no way to tell" the correct zoning. So, as Horwich acknowledged, the correct zoning could not be determined a mere review of the zoning map.

¶ 37    In both *Kinsey* and *Tan*, the defendants knowingly made misrepresentations about the properties. In *Kinsey*, the defendant knew the building permit allowed for four, rather than five, units. In *Tan*, the defendant knew of the several discrepancies between the building permits and what he built. Although Horwich did not know the zoning, Horwich designated the zoning for the space as B1-3. Horwich knew that the zoning designation he assigned to the space did not exist. In *Perkins*, like here, whether the plaintiff could have discovered the misrepresentation by a mere review of publicly available materials remained an unanswered material question of fact. And, as in *Gilmore*, where the realtor listed a dental office as a suggested use and told the buyer so, Horwich listed "grocery store" as a suggested use and told Edson the space "would be a great grocery."

¶ 38    *Randels* and *Hamming*, the cases Horwich wishes that we follow, do not support Horwich's position. In *Hamming*, the existing zoning and the zoning ordinance were matters of public record, which the plaintiff easily could have uncovered. Conversely, the true zoning here could not be determined by a mere review of the zoning map. In *Randels*, the broker and the broker's agent made no representations about a sewer hookup requirement to the eventual purchasers, who made their offer without having contacted the broker, broker's agent, or the

seller. Thus, the defendants never made a misrepresentation to the purchasers. Conversely, Horwich recorded an incorrect zoning classification on the MLS listing, which stated that the space was "[p]erfect for grocery." And Edson testified at his deposition that he twice toured the space with Horwich, once with his father and then with Bockwinkel. During both tours, Horwich affirmatively represented that the space was "great for a grocery store" and that a Stop & Shop had been there, knowing Edson wanted to lease the space to a grocery.

¶ 39     Because Horwich misrepresented to Edson that the space was suitable for a grocer and Edson could not, through ordinary prudence, have discovered that the space was not zoned for commercial use, Horwich's misrepresentations were statements of fact. Accordingly, we reverse the trial court's entry of summary judgment on the consumer fraud, common law fraud, and negligent representation counts, and remand for further proceedings.

¶ 40                                    Real Estate License Act

¶ 41     Edson argues that the trial court added an element of reliance not required by the Real Estate License Act. Edson further argues that Horwich had a duty to treat him as a client because Horwich believed Edson did not have a broker.

¶ 42     The Real Estate License Act requires that "[l]icensees shall treat all customers honestly and shall not negligently or knowingly give them false information." 225 ILCS 454/15-25 (West 2016). The act defines a customer as someone "who is not being represented by the licensee but for whom the licensee is performing ministerial acts." *Id.* § 1-10. Ministerial acts are "those acts that a licensee may perform for a consumer that are informative or clerical in nature and do not rise to the level of active representation on behalf of a consumer." *Id.* Examples of ministerial acts include attending an open house and responding to questions about the property from a

consumer, setting up appointments to view property, and describing the property or the property's condition. *Id.*

¶ 43     In the only case discussing a claim under the Real Estate License Act, *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 930 (2003), the broker's sales brochure identified a home as situated in an " '[a]cclaimed' " school district. After buying the home and learning that it was in a different school district, the buyers sued the broker, alleging, in part, that she violated the Real Estate License Act by making false, untruthful, and inherently misleading communications. *Id.* They also alleged that had they known the true school district, they would not have purchased the home. *Id.* The trial court dismissed the complaint. *Id.* at 932.

¶ 44     The appellate court reversed. *Id.* at 942. The court held that a plaintiff adequately states a claim under the Real Estate License Act by alleging that the false information (i) did not come from the seller, (ii) was material to the buyer, and (iii) caused damages. *Id.* Reliance is not a requirement. The trial court, however, held that Edson's the Real Estate License Act claim must include proof of reliance. Thus, we reverse the grant of summary judgment and remand.

¶ 45                      Evidence Regarding Damages

¶ 46     Edson also asks us to reverse the trial court's order granting Horwich's motion to bar evidence under Rule 219(c). Ill. S. Ct. R. 219(c) (eff. July 1, 2002). Edson produced a list of 126 new items and bank records on the 59th day before trial, missing the deadline by one day. The trial court granted the motion because Edson made the disclosures "just too close to trial." Edson argues that, on remand, the trial court should reconsider its order excluding the evidence. We agree. The purpose of the discovery rules, and of Rule 219, is to ensure a fair trial. *In re Marriage of Daebel*, 404 Ill. App. 3d 473, 488 (2010); see also *Wagner v. City of Chicago*, 254 Ill. App. 3d 842, 849-50 (1993) (trial court did not have to strike defendant's answer and

affirmative defenses as sanction for willful violation of discovery rules in failing to produce documents plaintiff requested three years earlier, where defendant's failure was not willful, and plaintiff was not prejudiced by late information).

¶ 47      The trial court did not abuse its discretion in granting the motion. *In re Estate of Klehm*, 363 Ill. App. 3d 373, 380 (2006) (abuse of discretion occurs when "trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view"). Nevertheless, the order was interlocutory; on remand, Edson may ask the trial court to reconsider its ruling. *Lake County Riverboat L.P. v. Illinois Gaming Board*, 313 Ill. App. 3d 943, 950 (2000) (trial judge may review, modify, or vacate interlocutory order at any time before final judgment).

¶ 48      Affirmed in part, reversed in part, and remanded.