2024 IL App (1st) 221877-U

SIXTH DIVISION

March 8, 2024

No. 1-22-1877

**NOTICE**:  This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TOM EDSON AND CHESTNUT INVESTMENT 1, LLC, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 19 L 12785 |
| | ) | |
| DAVID HORWICH AND HOMESERVICES OF | ) | |
| ILLINOIS, LLC D/B/A BERKSHIRE HATHAWAY | ) | |
| HOME SERVICES KOENIG RUBLOFF REALTY | ) | |
| GROUP, F/K/A PRUDENTIAL RUBLOFF, LLC, | ) | Honorable |
| | ) | Michael F. Otto, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Hyman and Tailor concurred in the judgment.

**ORDER**

¶ 1   ***Held:***   The circuit court erred by refusing to answer the jury's questions regarding the Plaintiffs' fraud claims and by finding in favor of Defendants on Plaintiffs' Real Estate License Act claim. We remand for a new trial on those claims only.

¶ 2     Following a joint jury and bench trial on multiple claims arising from a real estate transaction, the jury found in favor of Defendants David Horwich and HomeServices of Illinois (HomeServices) (hereinafter collectively "Defendants") against the Plaintiffs Tom Edson and Chestnut Investment 1, LLC (Chestnut) (hereinafter collectively "Plaintiffs") on claims of fraud, but in favor of Plaintiffs and against Defendants on claims of negligent misrepresentation. The circuit court then ruled in favor of Defendants on the bench trial counts for alleged violations of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1 *et seq.* (West 2010)) (Consumer Fraud Act) and Real Estate License Act of 2000 (225 ILCS 454/1-1 *et seq.* (West 2010)) (License Act). On appeal, Plaintiffs argue the circuit court erred by: (1) directing verdict against a particular element of damages; (2) refusing to include that element of damages in the jury instructions; (3) refusing to give a jury instruction regarding statutory violations as a theory of negligence; (4) finding in favor of Defendants on the Consumer Fraud Act claim; (5) refusing to answer two jury questions regarding the fraud claims; and (6) finding in favor of Defendants on the License Act claim. For the reasons below, we affirm in part, vacate in part, and remand in part for a new trial on the fraud and License Act claims only.

¶ 3                              BACKGROUND

¶ 4     Plaintiffs filed their complaint on October 14, 2014. Therein, they alleged that in November 2012, Edson sought to purchase an investment property in Chicago. He toured a unit in a building on the 200 block of East Chestnut Street (the "Property") after he reviewed promotional materials created by Horwich, a licensed real estate broker employed by HomeServices (then known as Prudential Rubloff). The materials described the Property as a former grocery store that was a "Perfect Location for Commissary, Fitness Center, Medical Office, Restaurant/Bar," and later reiterated the Property was "Perfect for Grocery, Medical Clinic, Fitness Center, Restaurant/Bar,

2

Office." The materials listed "Retail" as the "Property type." During a tour of the Property, "Horwich told Edson and his father that the [Property] was perfect for a grocery store or other commercial uses," and leftover grocery store equipment visibly remained in the space.

¶ 5    Allegedly in reliance on these representations, Edson sought a tenant for the Property. A potential tenant, Jerry Bockwinkel, owner of Bockwinkel's grocery stores, later toured the Property with Horwich and Edson, at which time Horwich allegedly stated the Property could be used as a grocery store and "would be a perfect location due to an absence of a local grocery store in the general area." Edson ultimately agreed to purchase the Property for $600,000 from owners LINVIC, LLC (LINVIC). Attorneys from Fogarty & Fugate, LLP, represented Edson in connection with the transaction.

¶ 6    The complaint continued that Bockwinkel eventually declined to lease the Property, and during negotiations with another prospective tenant, their broker informed Edson that the Property was not zoned for commercial use because it was "zoned DR," a residential designation. The Chicago Zoning Board confirmed this. Plaintiffs alleged that Edson failed in an attempt to re-zone the Property, and the zoning "substantially diminished" the Property's value.

¶ 7    The complaint listed multiple theories for liability, including, in relevant part, (1) count I for fraud against Horwich; (2) count II for fraud against HomeServices; (3) count III for negligent misrepresentation against Horwich; (4) count IV for negligent misrepresentation against HomeServices; (5) count VIII for violation of the Consumer Fraud Act against Horwich; and (6) count IX for violation of the Consumer Fraud Act against HomeServices. Plaintiffs also raised claims against their attorneys (Attorney Defendants). Plaintiffs later amended their complaint to add Count X against Defendants for violation of the License Act.

3

¶ 8    Following discovery, Defendants moved for summary judgment on all counts, which the circuit court granted. This court reversed the circuit court's ruling and remanded for further proceedings. *Edson v. Fogarty*, 2019 IL App (1st) 181135 (*Edson I*). During the pendency of that appeal, Plaintiffs and the Attorney Defendants completed a jury trial, after which the jury ruled for the Attorney Defendants.

¶ 9    Following remand, the claims against Horwich and HomeServices went to trial, which began in June 2022. Horwich represented himself. Before trial, the circuit court entered an order on the parties' motions *in limine*, in which the court, in relevant part, granted HomeServices' Motion *in Limine* No. 8, and ordered, "No party shall introduce at trial any evidence of the fair market value of the Property at the time of its conveyance back to the [condominium association] (Association) by the Plaintiffs."

¶ 10    During a jury instruction conference, defense counsel objected to the $600,000 purchase price as an element of damages. Counsel for HomeServices noted, [T]here's an order *in limine* barring the parties from introducing any evidence or testimony regarding the value of the [Property] when it was relinquished to the [Association]." The circuit court asked if the motion *in limine* was granted "[b]ecause there was no evidence developed?" to which another attorney for HomeServices responded, "Right." Plaintiffs' counsel argued it was not their "burden" to demonstrate the Property had some value, to which the court replied, "Well, [a plaintiff has] the burden of proving damages," and continued that the fact that Plaintiffs "might not have bought the [Property] but for the alleged negligent misrepresentations doesn't necessarily mean that you are damaged in the amount of the purchase price." Defense counsel argued that while Plaintiffs claimed the Property "had no value," there was no witness "to testify that it has no value," and furthermore, "[t]his isn't a rescission case where I'm getting the property back. It's gone." The

court stated, "I agree with the defendants. The purchase price is not a measure of damages because it does not take into account what the actual value of the asset purchased was." The court sustained the objection and refused to allow the purchase price of $600,000 as an element of damages.

¶ 11    Plaintiffs also submitted two proposed instructions that would instruct the jury that "if they find that a statute (Plaintiffs offered separate instructions for both the Consumer Fraud Act and the License Act) was violated, that is one factor they may take into account in determining whether there was negligence." Plaintiffs' counsel acknowledged the claims alleging violations of those acts would be resolved by the court, not the jury. Defense counsel argued that it would be prejudicial "if the jury gets involved" in the statutory claims. The court refused to give either instruction, describing the instructions as an attempt at "bootstrapping."

¶ 12    At trial, Horwich testified that he is a licensed realtor, and was working in that capacity for HomeServices in 2012 when he received a listing for the Property which was on the lower level of a high-rise condominium building. The Property had formerly housed a grocery store, the "Stop & Shop." The building also contained a restaurant and dry cleaner. Horwich admitted telling prospective buyers of the Property, including Edson, that the space was "perfect for a grocery store." Promotional materials for the Property contained similar language. Edson contacted Horwich regarding the listing in the fall of 2012, and the two then toured the Property in December 2012. During the tour, Horwich told Edson the Property had been a grocery store and showed Edson equipment that remained in the space.

¶ 13    Horwich admitted he wrote the Property was zoned B1-3 in the promotional materials. He consulted a zoning map before he included this information in the materials, which did not list the Property as zoned B1-3. Instead, the map indicated the building was zoned for residential use. A previous broker listed the Property as zoned B1. Horwich added the "-3" because in his experience,

zoning codes generally also have a dash. He did not take any steps to ensure the Property's zoning permitted a grocery before he entered the language regarding grocery stores on the promotional materials.

¶ 14    After the first tour, Edson subsequently toured the Property with Bockwinkel before offering $600,000 for the Property, which Horwich's client, LINVIC, accepted. Horwich earned commission from the sale.

¶ 15    On cross-examination by counsel for HomeServices, Horwich testified that the promotional materials contained a disclaimer which Horwich believed to mean that any prospective buyer of the Property "should do your due diligence and not rely on the document." Another broker, Marina Lee Ma, had the Property listing before Horwich, and Horwich "cloned" (i.e. copied) the B1 zoning information from Ma's promotional material. Horwich updated some information, including "things about current use being commercial," and changed the zoning from B1 to B1-3. Horwich did not recall exactly why he made this change, and ultimately stated, "I had mentioned earlier that I picked up the B1 from the previous broker. I looked at it and decided I was going to expound on that due to the fact that B1 typically refers to a small retail outlet, and then as you have the dash numbers increasing, they apply to the larger commercial units." He did not learn the zoning designation was inaccurate before the sale closed.

¶ 16    Edson testified that he first noticed the Property in 2012 on LoopNet, a real estate website. He contacted Horwich about the Property in November 2012. During the initial phone call, Horwich informed Edson the Property had been a grocery store and would be a "great space" for a grocery store. Edson visited the Property with Horwich, who provided Edson with the promotional materials during the visit. During this visit, Horwich stated to Edson that the Property was zoned "B1-3" and "would be perfect for a grocery store." The statements were consistent with

6

the information in the promotional materials. The zoning designation was important to Edson because he believed "1-3" meant the Property had many potential uses which would allow him to market it for rental to a "multitude of potential tenant classes." Edson did not personally verify the zoning because he believed his attorney would perform this task, and also because he "had no reason to doubt" Horwich. Edson testified that he "relied on [the zoning] information to make [his] decision to purchase the property." After Edson contracted to buy the Property, but before the closing, a meeting involving Edson, Horwich, and Bockwinkel occurred, at which time Horwich told Bockwinkel the zoning was "B1-3" and the Property "would be a spectacular location for a grocery store." Closing occurred on January 31, 2013. Attorney Kelli Fogarty represented Edson during the purchase and helped him form Chestnut to "take ownership of the [P]roperty at closing."

¶ 17   In January 2014, Edson learned that the Property "was not zoned for business uses" through his broker, who had learned the information from a broker for another prospective tenant. Edson hired the law firm of Schain Banks, and subsequently attorney Thomas Ramsdell, to assist in re-zoning the Property. Beyond hiring attorneys, Edson also personally attempted to convince the Association "to support a zoning change and petition the alderman to change the zoning of the property." No zoning change occurred, and eventually Chestnut ran out of money, forcing an agreement with the Association for the transfer of the Property.

¶ 18   Edson stated that he would not have purchased the Property had he known he could not receive a rental income from it. Moreover, had he learned of the actual zoning during the time between when LINVIC accepted his offer and the transaction closed, he would have canceled the contract.

¶ 19   On cross-examination by counsel for HomeServices, Edson testified that Fogarty was responsible for due diligence, but did not check the Property's zoning before closing, which Edson

7

only learned after closing. Another broker assisted Edson with the purchase, who also failed to perform due diligence regarding zoning. On cross-examination by Horwich, Edson testified he was "eager" to close on the Property so he could lease it out.

¶ 20  Patricia Santos testified that she works for Sudler, a company that managed the building in which the Property was located. She was involved in the building's management in late 2012. She met with Edson before he purchased the Property. Santos learned of the zoning issue through Edson. At some point following the sale, Chestnut stopped paying assessments to the Association, leading it to initiate foreclosure proceedings. The foreclosure litigation concluded in 2016 with Chestnut transferring the Property to the Association in exchange for forgiveness of the outstanding assessments and a payment of approximately $4000 for architectural drawings.

¶ 21  Plaintiffs entered portions of the deposition of Thomas Ramsdell, deceased, into evidence. Ramsdell testified that he represented Edson in relation to the Property as a zoning attorney. His efforts focused on zoning changes so Plaintiffs could "put some sort of viable commercial business use" to the Property. His understanding was if there was not a "zoning change, no tenant was going to talk to you."

¶ 22  John Christian Ficara also testified via deposition that he interacted with Edson and Ramsdell regarding the Property's zoning in his capacity as director of public affairs for Alderman Brian Hopkins. Ficara stated that "a zoning change in an existing condominium building like [this one] in a downtown district is very unlikely and frankly not common to our office." Following a tenant survey suggesting the tenants of the building supported opening a grocery store, Hopkins' office agreed to support a zoning change if a "grocer or convenience store tenant was secured." Ficara provided a letter with Hopkins' signature to Edson and Ramsdell confirming this position.

¶ 23    Plaintiffs rested, and HomeServices moved for a directed verdict on the fraud and negligent misrepresentation counts while Horwich was absent from court. In relevant part, counsel for HomeServices argued there was no indication of the value of the Property at the time Chestnut transferred it to the Association, and thus the purchase price element of damages "should not go to the jury because there was no proof whatsoever as to what that loss is." The circuit court denied the motion as to "liability," but granted it as to the purchase price as an element of damages. The court explained "there was no evidence presented in the plaintiffs' case of what the actual value of the unit was with the appropriate zoning. The jury would be required to speculate." The court made identical rulings on HomeServices' subsequent motions for directed verdicts on the Consumer Fraud Act and License Act claims. The court permitted Horwich to adopt HomeServices' directed verdict motions when he returned to court.

¶ 24    HomeServices recalled Santos, who testified that she did not know the Property's zoning before the 2014 inquiry.

¶ 25    HomeServices also recalled Edson, who testified that he did not recall seeing promotional materials for the Property prepared by Marina Lee Ma, but agreed the promotional materials authored by Ma contained the "B1" zoning designation when counsel for HomeServices showed Edson the materials.

¶ 26    After closing arguments, the circuit court instructed the jury, in relevant part, that it could award damages based on "the amount of money the Plaintiffs reasonably expended because of the defendants' misrepresentations," and "the amount of money the Plaintiffs reasonably expended in the exercise of ordinary care to minimize existing damages and to prevent further damage."

¶ 27    The court further instructed the jury regarding counts I and II for fraud as follows:

"[T]he plaintiffs claim that the defendants made the following statements: That the property in question was zoned 'B1-3'; That the property was perfect for Grocery, Medical Clinic, Fitness Center, Restaurant/Bar, Office; That the property could be used as a grocery store, a restaurant, bar, fitness center, medical office, office space, or retail. Plaintiffs further claim that the statements were false statements of material facts."

The court continued:

"As to the plaintiffs' claims for fraud in Counts 1 and 2, the plaintiffs have the burden of proving each of the following propositions by clear and convincing evidence: First, the defendant made a false statement of material fact. Second, the defendant knew the statement was false or the defendant made the statement in reckless disregard [of] whether it was true or false. Plaintiffs have the burden of proving that each of the following propositions is more probably true than not true: Third, the defendant made the statement with the intent to induce the plaintiff to purchase the property. Fourth, the plaintiff reasonably believed the statement and purchased the property in justifiable reliance on the truth of the statement. Fifth, the plaintiffs' damages resulted from the reliance."

¶ 28 During its deliberations, the jury asked a question of the circuit court, which read, "For Counts 1 and 2 of fraud, do we need to find all five propositions true for: statements wise, A, all three together? Or B, only one of three?" The court stated its "inclination is just to say, 'You have your instructions,' unless anybody disagrees." Counsel for HomeServices agreed with the court, and contended it was not "appropriate" to answer the question substantively. Plaintiffs' counsel responded, "I think there is a right answer for their question," and continued, "I am asking that [the court] answer the question that they may find in favor of the [Plaintiffs] if the five propositions in the instructions have been proved as to any of the alleged misrepresentations." Both Horwich

and HomeServices objected to Plaintiffs' request, and the court ultimately only responded to the jury: "[Y]ou have your instructions. Please keep deliberating."

¶ 29    Shortly thereafter, the jury asked another question, which read:

"Note: Do all three statements:

- B1-3;

- Property perfect for;

- Property could be used,

need to be true for each proposition?

Question: If one statement is false, does that [make] the entire proposition false?" (Emphasis in original).

The circuit court stated, "The answer *** is that the instructions just say plaintiffs have to prove that the defendant made a false statement of material fact. The instructions do provide that the plaintiffs claim that defendants made three separate false statements of material fact," but again only responded, "Please refer to your instructions and continue to deliberate."

¶ 30    The jury found in favor of Horwich and HomeServices and against Plaintiffs on the fraud counts, but for Plaintiffs and against Horwich and HomeServices on the negligent misrepresentation counts, awarding Edson $0 and Chestnut $41,000 on both counts.

¶ 31    After discharging the jury, the circuit court made its rulings on the bench trial counts for violations of the Consumer Fraud Act and License Act. The court ruled in favor of Horwich and HomeServices on the Consumer Fraud Act claims, explaining, "I do not believe that Mr. Horwich intentionally deceived Mr. Edson." Regarding the License Act, the court ruled in favor of Defendants. In so finding, the court stated, "one of the questions is whether the false information came from the seller. Again, Mr. Horwich testified, and I thought credibly, that he relied on the

11

prior listing sheet." The court continued that the B1 zoning description "came from the seller *** through the prior listing." Plaintiffs' counsel responded, "the evidence was clear that the seller was [LINVIC], and there was no evidence that any information came from that seller, and I don't think the evidence supported an inference based on nothing that the information in the Marina [Lee Ma] listing had come from that seller. The court responded, "I understand the point, and you are right. There was no direct testimony that the information on the prior listing sheet came from the seller, but I conclude that that is a reasonable inference from the testimony and facts and the evidence."

¶ 32   On June 30, 2022, the circuit court entered judgment as follows: (1) in favor of Horwich on Count I for fraud; (2) in favor of HomeServices on Count II for fraud; (3) in favor of Plaintiffs against Horwich on Count III for negligent misrepresentation, with $41,000 in damages to Chestnut; (4) in favor of Plaintiffs and against HomeServices for negligent misrepresentation, with $41,000 in damages to Chestnut; (5) in favor of Horwich on the Consumer Fraud Act claim; (6) in favor of HomeServices on the Consumer Fraud Act claim; (7) in favor of Defendants on the License Act claim.

¶ 33   Plaintiffs filed a posttrial motion, arguing in relevant part that the circuit court erred by (1) directing a finding on the purchase price element of damages; (2) not instructing the jury on the purchase price element of damages; (3) refusing to give certain other jury instructions, including those regarding the statutory theories of negligence deriving from the Consumer Fraud Act and License Act; (4) ruling for Defendants on the Consumer Fraud Act claims; (5) not responding substantively to the jury's questions; and (6) ruling for Defendants on the License Act claim. The court denied the motion in all relevant parts. This appeal followed.

¶ 34                                  JURISDICTION

¶ 35   The circuit court denied Plaintiffs' posttrial motion on November 9, 2022, and Plaintiffs filed their notice of appeal on December 12, 2022, after which this court granted their motion to file a late notice of appeal pursuant to Illinois Supreme Court Rule 303(d) (eff. July 1, 2017). Accordingly, this court has jurisdiction pursuant to Rule 303. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 36                                    ANALYSIS

¶ 37   Plaintiffs raise six claims on appeal. The first two center around the circuit court's decisions to bar Plaintiffs from pursuing the $600,000 purchase price as damages by (1) directing a verdict against that element of damages, and then (2) refusing to instruct the jury that the purchase price could be an element of damages. Plaintiffs further claim the court erred by (3) refusing to give Plaintiffs' proposed jury instruction on the statutory violation theories of negligence, (4) finding in favor of Horwich and HomeServices on the Consumer Fraud Act counts, (5) refusing to substantively answer the jury's questions regarding the fraud counts, and (6) finding in favor of Defendants on the License Act claim.

¶ 38   We first address the claims regarding the purchase price element of damages. Plaintiffs sought this element of damages in connection with all claims at trial—the two fraud counts, the two negligent misrepresentation counts, the Consumer Fraud Act counts, and the License Act count, and the circuit court ruled Plaintiffs could not recover this element of damages under any count.

¶ 39   A plaintiff bears the burden of proving their damages. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 106-07 (2006); *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 31. To meet this burden, a plaintiff must introduce sufficient evidence such that the factfinder can make a reasonable calculation of damages, though this need not be an exact figure. *Doornbos Heating and Air Conditioning, Inc. v. James D. Schlenker, M.D., S.C.*, 403 Ill. App. 3d 468, 487

(2010). Plaintiffs' theory for damages is that it purchased the Property due to misrepresentations by Horwich about zoning, which caused Plaintiffs to own property that was not of the nature Plaintiffs anticipated in making the purchase. In this situation, Illinois law maintains that, "The measure of actual damages, where the purchase of property is induced by fraud, is the difference between the value of the property as it in fact existed and the value that it would have had had the seller's representations been true." *Home Savings and Loan Ass'n of Joliet v. Schneider*, 127 Ill. App. 3d 689, 694-95 (1984), *aff'd in part, rev'd in part on other grounds*, 108 Ill. 2d 277 (1985) (citing *Four "S" Alliance, Inc. v. American National Bank & Trust Co. of Chicago*, 104 Ill. App. 3d 636 (1982)); see also *Beaton & Associates, Ltd. v. Joslyn Mfg. & Supply Co.*, 159 Ill. App. 3d 834, 844 (1987) ("One induced to contract through the fraud of another may elect to rescind the contract to recover the consideration paid, or affirm the contract and recover the difference between the property received and what he or she would have received but for the fraud.").

¶ 40    The circuit court granted Defendants' motions for a directed verdict on the purchase price as an element of damages based on a finding that Plaintiffs failed to introduce sufficient evidence to submit the issue to the jury. A circuit court may direct a verdict as to an element of damages. *Benford v. Everett Commons, LLC*, 2014 IL App (1st) 130314, ¶¶ 35-37. A directed verdict is proper where "there is a total failure or lack of evidence to prove a necessary element of the plaintiff's case." *Id.* ¶ 28. The decision whether to direct a verdict is reviewed *de novo*. *Id.*

¶ 41    The circuit court also refused Plaintiffs' request to instruct the jury that it could consider the purchase price as an element of damages, based on its above-referenced evidentiary finding and corresponding grant of Defendants' directed verdict motions. Regarding jury instructions, civil litigants "are entitled to have the jury instructed on the issues presented, the applicable legal principles, and the facts that must be proved to support a verdict," but the decision on what

14

instructions to give falls within the circuit court's discretion, and we review a court's decision whether to give a jury instruction for abuse of discretion. See *Bailey v. Mercy Hospital and Medical Center*, 2021 IL 126748, ¶ 42.

¶ 42 The record shows that before trial, the circuit court granted a motion *in limine* preventing Plaintiffs from introducing any evidence as to the value of the Property at the time it was transferred to the Association. Subsequently, at trial, there was no evidence on the Property's value under its actual residential zoning.

¶ 43 On this record, we agree with the circuit court that Plaintiffs failed to introduce sufficient evidence to present the purchase price as an element of damages to the jury. As the court noted, the law is clear that the proper determination of damages in this situation is the value the Property would have had if zoned for commercial use minus the value it had as actually zoned. *Home Savings*, 127 Ill. App. 3d at. 694-95. Plaintiffs provided no evidence for the jury to make a reasonable calculation as to the second figure. See *Doornbos Heating*, 403 Ill. App. 3d at 487. The record suggests Plaintiffs failed to develop this evidence in discovery, and Plaintiffs do not argue on appeal that the court erred in granting the motion *in limine*, or that Plaintiffs even had evidence to enter regarding the value of the Property as zoned residential, should the court have allowed it. The absence of this evidence is fatal. See *Benford*, 2014 IL App (1st) 130314, ¶ 35; see also *Sheth v. SAB Tool Supply Co.*, 2013 IL App (1st) 110156, ¶ 92 (certainty in damages not required, but a jury cannot base a damage award on speculation, and evidence must provide a reasonable basis for computing damages). It follows that the court did not err in granting a directed verdict on the purchase price as an element of damages, and, of course, did not then abuse its discretion in refusing a jury instruction that listed the purchase price as a viable element of damages.

¶ 44 Plaintiffs maintain the record sufficed to show Edson would not have purchased the Property but for Horwich's statements, and this is enough to present the purchase price as an element of damages to the jury. This argument fails because while it is generally correct that a defendant, found liable for negligent misrepresentation or fraud, is liable for the damages the plaintiff suffered for actions taken in reliance on the negligent or fraudulent conduct, Illinois law requires in this specific circumstance that a plaintiff introduce enough evidence that the factfinder can make a reasonable calculation of the difference between the value the property would have had if it was as plaintiff believed, and the property's actual value given the actual facts of the situation—here, the Property's value if zoned for commercial use minus its value as zoned residential. *Home Savings*, 127 Ill. App. 3d at 694-95. Plaintiffs cite *Nelson Brothers Professional Real Estate, LLC v. Freeborn & Peters, LLP*, 773 F.3d 853, 859 (7th Cir. 2014) and *Board of Trustees of Community College District No. 508 v. Coopers & Lybrand*, 208 Ill. 2d 259, 263 (2003) in support, but neither case aids their position. *Nelson Brothers* emphasizes Plaintiffs' failure, as the court there explained:

> "The plaintiffs' loss was the difference between their expenditures in trying to obtain a substantial interest in the shopping center and what they obtained for those expenditures—namely, that interest. If that interest were worth anything, awarding the plaintiffs as damages all their expenditures would overcompensate them. But their contention, which the jury appears to have accepted, is that the interest they acquired was worthless." *Nelson Brothers*, 773 F.3d at 856.

The difference here is that Plaintiffs *failed* to establish the Property's value, worthless or otherwise, unlike the plaintiffs in *Nelson*, who established the property they acquired was worthless. *Board*

16

*of Trustees*, meanwhile, centered on the purchase of securities, and contains no guidance on calculating damages in our context. *Board of Trustees*, 208 Ill. 2d at 262-66.[1]

¶ 45    Plaintiff argues there was sufficient information from which the jury could have concluded the value of the Property was zero, but the record belies this argument. Plaintiff offered no evidence about the Property's value as zoned residential, $0 or otherwise. That Edson had difficulty finding a commercial tenant is not competent evidence the Property was literally worthless, as damages must be based on measurable elements, not speculation or conjecture. *Sheth*, 2013 IL App (1st) 110156, ¶ 92. It was incumbent upon Plaintiffs to submit competent evidence of the value of the Property under its residential zoning. No such evidence is in the record, and thus Plaintiffs failed to meet their burden, and the circuit court's decisions in accordance were proper.

¶ 46    Plaintiffs further argue that this court in *Edson I* validated their theories of damages, which should have bound the circuit court on the issue as the "law of the case." See *Krautsack v. Anderson*, 223 Ill. 2d 541, 552 (2006) ("Generally, the law of the case doctrine bars relitigation of an issue previously decided in the same case."). This is an inaccurate representation of *Edson I*; there, another panel of this court resolved summary judgment issues only and made no binding declarations regarding what damages the evidence at trial would or would not support. *Edson I*, 2019 IL App (1st) 181135, ¶¶ 39, 44, 47; see also *Pepper Construction Co. v. Palmolive Tower Condominiums, LLC*, 2021 IL App (1st) 200753, ¶ 69 ("The law of the case doctrine does not apply where different issues are involved.").

¶ 47    Finally, Plaintiffs argue that Defendants could have called a property appraiser to testify if they intended to argue the purchase price was not a proper element of damages. This argument

---

[1] Plaintiffs' citation to *Metrick v. Chatz*, 266 Ill. App. 3d 649 (1994), similarly fails because the court there does not discuss damage calculation in this context.

fails because it improperly shifts the burden of proving damages from plaintiff to defendant. See *Razor*, 222 Ill. 2d at 106-07. Illinois law maintains that it is a plaintiff's burden, not a defendant's, to establish its damages, and this meant Plaintiffs had to introduce evidence permitting the jury to make a reasonable calculation of the value of the Property as zoned residential. *Id.* Plaintiffs supplied no such evidence, and it was certainly not Horwich's or HomeServices' obligation to correct Plaintiffs' failure.[2]

¶ 48    Plaintiffs next claim that the circuit court erred regarding the negligent misrepresentation jury instructions because it refused to instruct the jury that if it found Horwich or HomeServices violated the statutory obligations imposed by the Consumer Fraud Act or License Act, the jury could consider that violation in determining negligence.

¶ 49    In certain circumstances, a jury may consider whether a defendant violated a statute in determining whether that defendant acted negligently. See Illinois Pattern Jury Instructions, Civil, No. 60.01 (revised Dec. 2011). As mentioned above, a circuit court's decision whether or not to provide a particular jury instruction is reviewed for abuse of discretion. *Bailey*, 2021 IL 126748, ¶ 42. A reviewing court should not reverse a verdict based on an erroneous jury instruction unless that error caused "serious prejudice." *Id.* (citing *Heastie v. Roberts*, 226 Ill. 2d 515, 543 (2007)).

¶ 50    We find that Plaintiffs' claim regarding the negligent misrepresentation jury instructions fails because, even assuming the circuit court erred by refusing the instructions, Plaintiffs suffered no prejudice because the jury ruled in their favor on the negligent misrepresentation claims. *Id.* In

---

[2] Plaintiffs briefly argue that the court should not have permitted Horwich to adopt HomeServices' directed verdict motion, but provide no legal basis for this contention. This argument therefore fails because it is a party's burden to provide legal support for their argument. See *First Mercury Insurance Co. v. Nationwide Security Services, Inc.,* 2016 IL App (1st) 143924, ¶ 21.

18

their brief, Plaintiffs acknowledge this, but contend that if this court remands for a new trial that includes their counts for negligent misrepresentation, the circuit court at the new trial should instruct the jury on the statutory violation theories of negligence. Based on the above, however, Plaintiffs are not entitled to a new trial on the negligent misrepresentation claims, as their only argument regarding those claims stemmed from the purchase price issue.

¶ 51    Plaintiff next claims the circuit court erred in finding for Defendants on the Consumer Fraud Act claims. To establish a claim under the Consumer Fraud Act, a plaintiff must show, " '(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.' " *Edson I*, 2019 IL App (1st) 181135, ¶ 20 (quoting *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002)). A circuit court's ruling on a Consumer Fraud Act claim is reviewed under the manifest weight of the evidence standard. *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 113. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). The reviewing court will not substitute its judgment for that of the trier of fact. *Id.*

¶ 52    We find the circuit court's decision that Plaintiffs did not establish each element of their Consumer Fraud Act claim was not against the manifest weight of the evidence. The court found Horwich did not intend Edson to rely on his statements, and thus Plaintiffs failed to establish the second element. See *Edson I*, 2019 IL App (1st) 181135, ¶ 20. A reasonable factfinder could have reached the same result if it credited Horwich's testimony that he intended Edson to perform due diligence and rely on his attorney's advice before purchasing the Property. The court here credited

this testimony, which was also supported by the disclaimer in the promotional materials. The record could also support the opposite conclusion, based on the promotional materials and Edson's testimony regarding Horwich's statements, should a factfinder credit Edson's account over Horwich's. In this situation, where the accounts of Edson and Horwich are in direct conflict and both have support in the record, we cannot reverse under a manifest weight of the evidence standard, as it is improper for this court to substitute its judgment for that of the circuit court on credibility and evidentiary weight. See *Eychaner*, 202 Ill. 2d at 251-52. Accordingly, we cannot disturb the court's decision on the Consumer Fraud Act claims and must affirm.

¶ 53    Plaintiffs next claim the circuit court erred by refusing to substantively answer the jury's questions regarding the fraud instructions. In Illinois, when a jury asks the circuit court a question demonstrating confusion over a relevant legal issue, the court generally has a duty to "instruct the jury further or clarify the point of law that has caused doubt or confusion." *Hojek v. Harkness*, 314 Ill. App. 3d 831, 834 (2000). This is true even if the jury was properly instructed initially. *People v. Childs*, 159 Ill. 2d 217, 229 (1994). When a jury makes its difficulties clear, "the court should resolve them with specificity and accuracy *** [and] failure to answer or the giving of a response which provides no answer to the particular question of law posed" can be "prejudicial error." *Id.*

¶ 54    Circuit courts have some discretion in this area, however, and "in exercising that discretion, depending on the nature of the question, [the court may] choose to abstain from responding." *Hojek*, 314 Ill. App. 3d at 834. These circumstances include, "when the instructions are readily understandable and sufficiently explain the relevant law, where further instructions would serve no useful purpose or would potentially mislead the jury, when the jury's inquiry involves a question of fact, or where the giving of an answer would cause the court to express an opinion that would likely direct a verdict." *People v. Millsap*, 189 Ill. 2d 155, 161 (2000). A circuit court's

20

decision on how to respond to a jury's question is reviewed for abuse of discretion. *Hojek*, 314 Ill. App. 3d at 834. "An abuse of discretion occurs only when the court's decision was arbitrary or unreasonable to the degree that no reasonable person would adopt the same view." *People v. Jaimes*, 2019 IL App (1st) 142736, ¶ 45.

¶ 55    The jury asked two related questions. First, it asked, "For Counts 1 and 2 of fraud, do we need to find all five propositions true for: statements wise A, all three together? Or B, only one of three?" The circuit court refused to substantively respond, rejecting Plaintiffs' position that there was a clear answer, which the court should provide, and agreeing with Defendants that a substantive response was inappropriate. After the court responded only that the jury should follow its instructions and continue deliberating, the jury then asked another question on the same point: "Note: Do all three statements:

- B1-3;

- Property perfect for;

- Property could be used,

need to be true for each proposition?

Question: If one statement is false, does that [make] the entire proposition false?" (Emphasis in original).

The court again only instructed the jury to follow its instructions and continue deliberating. In so deciding, the court stated that the correct answer was Plaintiffs only needed to establish all five elements as to one of the three alleged false statements, but believed the instructions were sufficiently clear to convey this information. The jury ultimately ruled in favor of Defendants on the fraud counts.

¶ 56    We find that the circuit court abused its discretion by not answering the jury's questions to clarify Plaintiffs only needed to establish the five elements of fraud as to one of the three alleged false statements. While circuit courts have discretion in how they respond to jury questions, this is an instance where the general rule that the court has a duty to answer when it will clarify a matter of law on which the jury has demonstrated confusion applies. See *Childs*, 159 Ill. 2d at 228-29. The jury instructions stated that Plaintiffs had to prove Horwich made "a" false statement—that is, a singular false statement, meaning any one of the three alleged false statements could suffice. But for a lay juror, it is not surprising that this lone word, "a," did not make this point of law apparent, and the jury responsibly asked for clarification instead of assuming the law was one way or another based on its uncertain understanding. The parties and the court all acknowledged the question had a correct and succinct answer. This answer could have been provided without the court suggesting a verdict. See *Millsap*, 189 Ill. 2d at 161. Nor are the other concerns regarding substantively answering a jury's question at issue—the instructions were not readily understandable, as described above; an answer would have served an important purpose; and the question did not revolve around an issue of fact. See *Id.* Finally, because of the court's refusal to answer this question, the certainty with which the jury reached its verdict on counts I and II is now questionable, which is the issue the general rule on jury questions is meant to avoid. See *Van Winkle v. Owens-Corning Fiberglas Corp.*, 291 Ill. App. 3d 165, 173 (1997) (prejudicial error not to substantively respond to jury's question where it involved "a substantive legal issue" that was "potentially dispositive").

¶ 57    On this record, it is unclear if the jury properly understood Plaintiffs only had to prove all five elements of fraud as to one of the three alleged false statements, and therefore the circuit court

abused its discretion by failing to clarify this point of law when it had the chance. Accordingly, we vacate the jury's verdicts on counts I and II, and remand for a new trial on those counts.

¶ 58    *Hojek* is helpful to our resolution. There, this court found that the circuit court's refusal to answer a jury question on whether a party's medical expenses were covered by insurance necessitated a new trial because, "the jury brought a question to the attention of the trial court concerning a substantive legal issue" which "went to the issue at the heart of the case," in an instance where the question did not concern an issue of fact and would not cause the court to express an opinion on its favored result. *Hojek*, 314 Ill. App. 3d at 837. The *Hojek* court further explained that a substantive answer was appropriate because "a simple instruction would have been useful to the jury and provide[] an accurate answer to their question." *Id.* This situation is similar, as the question the jury asked was about a pure legal issue—what elements Plaintiffs had to prove to establish a claim for fraud—and clarification of that issue would have aided the jury in their task, without suggesting the court's favored verdict to the jury.

¶ 59    *Hojek* cited *Van Winkle*, which is also instructive. In *Van Winkle*, the circuit court refused to answer a jury's question regarding a purely legal issue on civil conspiracy. *Van Winkle*, 291 Ill. App. 3d at 171-73. The *Van Winkle* court found this constituted reversible error because the jurors expressed confusion about a "potentially dispositive" substantive legal issue. *Id.* at 173. Our situation is analogous—the jury expressed confusion about a purely legal issue, the proper understanding of which was crucial to its disposition on counts I and II.

¶ 60    Also instructive is the Illinois Supreme Court's discussion in *Childs* (though in the context of a criminal matter), where the circuit court refused to answer the jury's question of "whether defendant could be found guilty of armed robbery and either voluntary or involuntary manslaughter, or if a finding of guilt of armed robbery mandated" a finding of guilt for murder.

*Childs*, 159 Ill. 2d at 225, 229. The court considered this "an explicit question which manifested juror confusion on a substantive legal issue," and therefore the circuit court had a duty to substantively respond to it. *Id.* The *Childs* court explained that the "jurors are entitled to have their inquiries answered," and the general rule regarding the court's duty applies where the jury "has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion." *Id.* at 228-29. Similarly, here, the jury could not have made its specific point of confusion any clearer, and there was a simple, neutral answer for the court to give. Its refusal to do so, therefore, violated its duty as the *Childs* court explained it, and the error was prejudicial given the verdict.

¶ 61 Defendants argue that Plaintiffs cannot seek relief on this claim because it was Plaintiffs' instruction about which the jury expressed confusion. This argument fails because it is irrelevant which party offered the instruction at issue—as the *Childs* court explained, the duty to respond substantively to a jury question can arise even if the jury was properly instructed initially. *Id.* at 229.

¶ 62 Defendants also argue that the law granting circuit courts discretion in this area should guide our decision, citing *People v. Reid,* 136 Ill. 2d 27, 39 (1990), in support. In *Reid*, the supreme court decided that the circuit court properly refused to substantively answer the jury's question where the court concluded the jury was not confused, and an answer could potentially "indicate a specific verdict to the jury." *Id.* at 41. The *Reid* court decided that while the circuit court could have answered the question, it was within its discretion not to in that instance. *Id.* at 42. We believe *Reid* is distinguishable from this case because there was no risk that an answer would have indicated a verdict, as simply clarifying what elements the jury needed to find in order to rule in Plaintiffs' favor is not suggestive that Plaintiffs established those elements. Moreover, to the extent the court

did not believe the jury was confused, that belief is directly rebutted by the record. The jury twice asked for clarification on a specific issue—it would be hard to ask the jury to more clearly express confusion. Given the record, we reject that the result in *Reid* is controlling, and maintain that the principles illustrated in *Hojek*, *Van Winkle*, and *Childs* apply.

¶ 63 Finally, we address Plaintiffs' claim that the circuit court erred by finding for Defendants on the License Act claim because it erroneously based its ruling on an unreasonable inference that the seller provided the zoning information.

¶ 64 Under the License Act, real estate brokers must "treat all customers honestly and shall not negligently or knowingly give them false information." 225 ILCS 454/15-25 (West 2010). To establish a claim under the License Act, a plaintiff must show that a broker negligently or knowingly provided false information, and "the false information (i) did not come from the seller, (ii) was material to the buyer, and (iii) caused damages." *Edson I*, 2019 IL App (1st) 181135, ¶ 44 (citing *Capiccioni v. Brennan Naperville, Inc.*, 339 Ill. App. 3d 927, 930 (2003)). We review a circuit court's findings on whether a License Act violation occurred under the manifest weight of the evidence standard. *Pack*, 2019 IL App (1st) 182447, ¶ 92.

¶ 65 The circuit court resolved this claim by finding that Plaintiffs failed to establish the information at issue did not come from the seller, explaining that it could infer from the record that LINVIC supplied the original B1 zoning information. *Edson I*, 2019 IL App (1st) 181135, ¶ 44. Plaintiffs argue that this finding was against the manifest weight of the evidence because there was no evidence in the record regarding any conduct by LINVIC with respect to the zoning information. The court acknowledged this but based its inference on the evidence that the previous broker, Marina Lee Ma, included the B1 zoning designation in her promotional materials for the Property. There is no evidence in the record regarding Ma's reasons for listing the Property's

zoning as B1. Horwich testified that he generally copied or "cloned" Ma's listing, but independently changed Ma's B1 zoning designation to B1-3, despite checking a zoning map and not seeing B1-3 as the listed zoning for the Property.

¶ 66    On this record, we find the circuit court's decision was against the manifest weight of the evidence, and remand for a new trial on this claim, because the inference that the zoning information came from the seller was unreasonable. The only competent evidence in the record on this element is that the information came from Horwich and Ma, not LINVIC. The record lacks any evidence of conduct by someone on behalf of LINVIC, or any indication as to how or why Ma decided to list the zoning as B1. While we must provide significant deference to a lower court's findings on manifest weight of the evidence we review, we can only defer to *reasonable* inferences. See *People v. Thomas*, 2019 IL App (1st) 170474, ¶ 39 (unreasonable inference is against the manifest weight of the evidence). Based on the above, the court's finding was based on speculation, not evidence, and thus unreasonable. See *Burmood v. Anderson*, 2023 IL App (2d) 230092, ¶¶ 36-38 (citing *Daniggelis v. Pivan*, 159 Ill. App. 3d 1097, 1103-04 (1987), for proposition that a "verdict that is based on conjecture or speculation is against the manifest weight of the evidence"). We note that Plaintiffs request entry of judgment in their favor on this claim, but this is not appropriate relief because the circuit court did not explain whether it found Plaintiffs established the other elements of a License Act claim.

¶ 67                                              CONCLUSION

¶ 68    The circuit court correctly directed a verdict against the purchase price as an element of damages, and then refused to give a jury instruction on that element. Additionally, the court's refusal to instruct the jury on the statutory theories of negligent misrepresentation did not prejudice

Plaintiffs, and the court's findings on the Consumer Fraud Act claims were not against the manifest weight of the evidence. We affirm the court's findings on those issues.

¶ 69     The court erred, however, by refusing to answer the jury's questions regarding Plaintiffs' fraud claims, and by finding in favor of Defendants on the License Act claim. We therefore vacate the jury's verdict on the fraud claims and the court's verdict on the License Act claim, and remand for a new trial on those claims only.

¶ 70     Affirmed in part; Vacated in part; Remanded in part with instructions.