**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250116-U

Order filed May 1, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| LISA MARIE LUALLEN, | ) | Grundy County, Illinois, |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | Appeal No. 3-25-0116 |
| and | ) | Circuit No. 22-DC-78 |
| | ) | |
| SHANE LUALLEN, | ) | Honorable |
| | ) | Sheldon R. Sobol, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Bertani concurred in the judgment.
Justice Holdridge dissented.

_____

**ORDER**

¶ 1    *Held*:  Trial court did not err by finding equities demanded reimbursement for the cost of health insurance premiums attributable to parties' shared children, but it erred in ordering total reimbursement. Vacated and remanded.

¶ 2    Respondent, Shane Luallen, petitioned for a rule to show cause, seeking to hold petitioner, Lisa Luallen, in contempt in relation to payments he made to her for costs attributable to their two shared children's health insurance premiums. The trial court found that although Lisa did not

violate a court order, the equities demanded that she reimburse Shane the total amount he paid to her. Lisa appeals. We vacate and remand.

¶ 3                                             I. BACKGROUND

¶ 4        The parties were divorced in 2009. They share two children, T.L. (born in 1998) and R.L. (born in 2001). Lisa remarried. She and her new husband, Brian, had a child, and Brian had a child from a previous relationship. In March 2015, the court entered an agreed order modifying joint custody (the agreed order). The parties were to share joint legal custody and divide parenting time equally, and neither party was obligated to pay child support. Relevant to this appeal is paragraph 11, which provides,

> "11. Health Insurance/Medical Expenses—the minor children are currently covered as dependents on a health insurance policy through the employment of [Lisa's] significant other. [Shane] shall reimburse [Lisa] for the cost of the monthly premium that is attributable to the two minor children's health insurance coverage. [Shane] will pay this amount to [Lisa] on or before the 15th of each month. In the event one or both of the minor children become ineligible for coverage under their current insurance policy, the parents shall immediately coordinate an alternative arrangement for health insurance and equally (50/50) divide the costs of premiums attributable to the minor children. Any and all uncovered health related expenses, including deductibles, dental and orthodontia expenses, and vision expenses for the minor children shall be divided equally (50/50)."

¶ 5        Brian maintained health insurance through his employer. Brian's employer offered two health insurance plans; one covers the employee only, and the other covers the employee and their family. There were six people on the health insurance plan: Brian, Lisa, T.L., R.L., and the two

2

children unrelated to Shane. The cost of the family plan was the same regardless of the number of people on the plan. From 2015 to 2022, Lisa would inform Shane via text message the amount he owed for the children's health insurance. She calculated this by deducting the cost of the individual plan from the cost of the family plan. Shane would then send payments to Lisa.

¶ 6        In October 2022, Shane petitioned for a rule to show cause. He alleged Lisa made false statements to him to collect payments when she knew there was no cost for the monthly premium attributable to T.L. and R.L.'s health insurance. Shane sought reimbursement of $29,401.24, the amount he paid to Lisa for their children's health insurance since March 2015.

¶ 7        Attached to the petition were text messages between Lisa and her friend, Myra Wiley, in which Lisa tells Wiley it does not cost any extra to include T.L. and R.L. on Brian's health insurance plan. In another text message, Lisa writes, "Oh well. I rode this train longer than I thought I would be able to."

¶ 8        Later that month, the court ordered Lisa to show cause why she should not be held in indirect civil contempt.

¶ 9        In December 2022, Lisa moved to dismiss the petition for rule to show cause and to vacate the rule. Lisa argued the petition failed to specify any terms of the agreed order that she intentionally or willfully disobeyed, paragraph 11 of the agreed order did not require her to do anything, and the court had no jurisdiction to order Brian to do anything. The trial court denied Lisa's motion.

¶ 10        Lisa answered the factual allegations of Shane's petition and asserted Shane was to pay the cost attributable to the health insurance coverage of their two children, that is, the cost of family coverage. She also asserted two affirmative defenses: (1) there was no contempt because she was not required to provide health insurance cost information, and (2) Shane waived any claim that the

3

cost attributable to the children was not intended to be the difference between individual and family coverage and he should be estopped from doing so.

¶ 11      A two-day bench trial took place in October 2024. The record does not contain a verbatim transcript or acceptable substitute for the first day of trial. See Ill. S. Ct. R. 323 (eff. July 1, 2017). Shane testified the agreed order required him to pay the costs attributable to his two children on Brian's health insurance coverage, but he never agreed to pay for the entire cost of the family coverage under Brian's plan. Lisa and Shane never discussed how she calculated the cost attributable to the two children. Lisa just sent Shane a text message with the amount he owed; she did not send any documentation until 2019 and 2020. But on those documents, she wrote amounts with no further explanation. He trusted Lisa to provide accurate costs, but he himself did not investigate the cost attributable to his children. In August 2022, after talking with Lisa's friend, Myra, he discovered there was no cost attributable to the children, who were then ages 23 and 21, and he stopped making payments. Since March 2015, he has paid Lisa a total of $29,402 for his children's health insurance coverage.

¶ 12      Wiley testified she was Lisa's former best friend. She contacted Shane in September 2022 and told him to stop making payments to Lisa. Lisa had sent fake documents to Shane and changed the numbers on the documents. Lisa had told her several times it did not cost her any additional funds to have the two children on Brian's health insurance plan.

¶ 13      Lisa submitted a handwritten summary of insurance coverage providing that, from 2013 to 2024, Brian provided and paid for health insurance through his employer. Shane submitted a summary indicating he paid Lisa a total of $29,402.24 for health insurance premiums. The trial record also contains nine years' worth of benefit enrollment confirmations from Brian's employer. For all the years provided, the family members were enrolled in medical, dental, and vision

4

benefits, but most of the documentation does not provide a complete cost breakdown. Seven of the enrollment confirmations do not include dental or vision costs, showing only medical costs. In a text message from Lisa to Shane in January 2019, she wrote, "Here is the 2019 insurance confirmation. I divided it into months so there wouldn't be the extra 4 weeks at the end of the year." T.L. and R.L. turned 18 years old in 2016 and 2019, respectively.

¶ 14    The parties submitted written closing arguments. Shane argued Lisa willfully violated the agreed order by submitting reimbursement requests when there was no cost attributable to adding his children to Brian's health insurance plan. Shane noted Lisa's reimbursement requests resulted in him paying for the health insurance coverage of Lisa and two children who were not his own. Additionally, he pointed out that Lisa's figures differed from the records subpoenaed from Brian's employer. Therefore, he contended, Lisa should be held in contempt for submitting false reimbursement requests.

¶ 15    Lisa argued the parties agreed Brian would put the children on his health insurance as long as Shane paid the difference between single coverage and family coverage, and the agreed order memorialized this prior arrangement in paragraph 11. Lisa noted paragraph 11 did not require her to provide cost information to Shane, and she argued a party cannot be held in contempt for an implied order. Moreover, she asserted, the phrase "attributable to the children" is vague and subject to various interpretations. Lastly, she argued any payments Shane made after both children's emancipation were purely voluntary and cannot be the subject of contempt.

¶ 16    The trial court entered its written order in January 2025. It held that, while Lisa could not be found in contempt, the evidence clearly established she used the agreed order to "perpetuate a level of fraud" resulting in her wrongful receipt of $29,402.24 from Shane. The trial court found that adding Shane's two children to Brian's health insurance plan cost nothing, yet Lisa told Shane

he was to pay the difference between individual and family coverage. According to the court, this resulted in an "outrageous" misuse of the agreed order, with Shane paying the entire cost of Brian's family coverage. The trial court specifically found, however, that Lisa's false reimbursement requests did not violate any clear, specific language in the agreed order, as the order did not require Lisa to provide accurate figures.

¶ 17    Nevertheless, the trial court ordered Lisa to repay Shane $29,402.24, finding "the equities demand reimbursement." According to the court, there was "no plausible rationale by which Lisa should be allowed to keep the bounty of her misrepresentations and deceitful conduct." The court further found that, because Shane's payments were made pursuant to the agreed order, they could not be considered voluntary overpayments.

¶ 18    Lisa appeals.

¶ 19                            II. ANALYSIS

¶ 20    On appeal, Lisa argues the trial court erred by (1) failing to dismiss Shane's petition for rule to show cause because the allegations did not support a finding of contempt or fraud against her, (2) entering a judgment order against Lisa for $29,000 based on fraud when the elements of fraud were not properly pled, no material misrepresentation of fact was pled, and she only communicated her legal opinion regarding Shane's contribution to health insurance expenses, and (3) entering judgment against Lisa for amounts Shane paid for health insurance for periods of time when one or both of the children were fully emancipated and child support obligations had terminated. We address each issue in turn.

¶ 21                        A. Standard of Review

¶ 22    We review the trial court's ruling on a motion to dismiss *de novo*. *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7. Regarding the judgment against Lisa, we review for an abuse of

6

discretion when the trial court exercises its equitable powers or makes "a judgment call," but we review under the manifest weight of the evidence standard when reviewing factual or evidentiary determinations. *In re Marriage of Dragoizulicic & Zulicic*, 2021 IL App (1st) 191732, ¶ 23.

¶ 23                                    B. Lisa's Motion to Dismiss

¶ 24        Lisa argues the trial court should have dismissed Shane's petition because his allegations do not support a claim for civil contempt or fraud and his petition improperly commingled the two claims. Lisa does not reference her motion to dismiss, the statutory section under which it was brought, or any of the standards applicable to motions to dismiss. Based on the arguments she makes, however, it appears Lisa is contesting the facial sufficiency of Shane's petition. See 735 ILCS 5/2-615 (West 2022).

¶ 25        "Generally, where a trial court denies a defendant's motion to dismiss a complaint, and that defendant elects to file an answer to the complaint, the defendant *waives* any defect in the pleading." (Emphasis in original.) *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 60 (1994). Although a defendant may raise a claim that the complaint fails to state a cause of action, "courts draw a distinction between a complaint that alleges no cause of action, which may be challenged at any time, and one which defectively or imperfectly alleges a cause of action." *Id.* at 62.

¶ 26        After the trial court denied Lisa's motion to dismiss, Lisa filed a response to the petition in which she admitted and denied the petition's factual allegations and set forth two affirmative defenses. As such, Lisa has waived any defect in Shane's petition. *Id.* at 60. And because Lisa does not argue the petition alleged no cause of action but, rather, defectively alleged causes of action, our analysis could end here.

¶ 27        Waiver aside, Lisa's arguments lack merit. Here, Shane did not allege fraud in his petition; he only sought for Lisa to be held in civil contempt. Thus, because he pled only one claim, there

7

was no need for separate counts. Moreover, Shane's petition contained facts that reasonably informed Lisa he was seeking to hold her in willful contempt. See *Disc Jockey Referral Network, Ltd. v. Ameritech Publishing of Illinois*, 230 Ill. App. 3d 908, 912 (1992) ("[N]o pleading is defective in substance if it contains facts which reasonably inform the opposite party of the nature of the charge to be answered."); see also *Brandeis Machinery & Supply Co. v. C. A. McNeely General Contracting & Equipment Co.*, 18 Ill. App. 2d 396, 398 (1958) (an imperfect complaint will support a judgment if its allegations reasonably inform defendant of the nature of the claim). Lisa's argument that the trial court should have dismissed Shane's petition therefore fails.

¶ 28                               C. Equities Demand Reimbursement

¶ 29        Lisa argues the trial court erred when it entered judgment against her based on misrepresentation or fraud when the elements of fraud were not properly pled in the petition and no material misrepresentation of fact was pled. She also argues that there was no specific formula for calculating the amount of the premium "attributable to the children" and she therefore cannot be held liable for providing information and her opinion regarding the costs.

¶ 30        We disagree with the premise of Lisa's argument—that the trial court entered judgment against her based on a finding of misrepresentation or fraud. Admittedly, Shane's petition did not allege the cause of action of fraud, and the court's order employed rather strong language suggesting Lisa had acted fraudulently and deceitfully. However, the court's order makes clear the reimbursement order was not based on fraud or misrepresentation. Rather, the reimbursement order was grounded in the court's inherent equitable authority.

¶ 31        Courts have inherent equitable authority (*Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 298 (2000)) and may invoke that authority *sua sponte*. *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 614 (2007); see *People v. Vincent*, 226 Ill. 2d 1, 12-13 (2007). The

8

trial court found that although Lisa could not be found in contempt, "the equities demand[ed] reimbursement," and Shane was entitled to recover the entire sum of payments he made for his children's health insurance coverage.

¶ 32     "The law is replete with legal theories ***, the underlying principle of which is that one person should not profit at the expense of another because of a wrong or a mistake." *In re Marriage of Tollison*, 208 Ill. App. 3d 17, 20 (1991). The evidence in this case showed Lisa provided inaccurate information to Shane regarding his support obligation under the agreed order. The evidence further showed Lisa knew Shane was not obligated to pay the amount she reported and even went so far as to brag in text messages to her friend that she had received more than she thought she was entitled. We cannot find, under these circumstances, the trial court abused its discretion when it concluded the equities demanded that Lisa reimburse Shane.

¶ 33     That said, we conclude the trial court abused its discretion when it ordered Lisa to reimburse Shane for the entire amount he had paid. According to paragraph 11 of the agreed order, Shane was required to reimburse Lisa for the cost of the monthly health insurance premium attributable to T.L. and R.L. While the order does not clarify the meaning of "attributable," the agreed order and the parties' conduct showed Shane believed he was obligated to pay something toward the children's health insurance. As such, the equitable solution would have been to divide the monthly premium of the family plan by the number of family members on the plan, and then multiply that amount by the number of Shane's children to determine the amount attributable to them.

¶ 34     Equity therefore demands that we remand this matter for the trial court to recalculate the amount Lisa is to reimburse Shane. We instruct the trial court to use the equitable calculation noted

9

above (*supra* ¶ 33), while also considering (1) the costs provided in the records subpoenaed from Brian's employer and (2) the number of people on the plan.

¶ 35                           D. Voluntary Payments

¶ 36     Lisa argues Shane's payments after each child's emancipation were voluntary and he cannot collect those amounts. Shane, in response, argues this is not a typical support-overpayment case. According to Shane, Lisa misrepresented the cost of the health insurance coverage, which resulted in Shane involuntarily paying for the entirety of Brian's health insurance plan, and allowing such a windfall to Lisa is unreasonable.

¶ 37     "[T]he general rule is that no credit is given for voluntary overpayments of child support, even if they are made under the mistaken belief that they are legally required." *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 862 (2000). "Exceptions to the rule regarding voluntary overpayment have been recognized where the equities of the circumstances so demand and where allowing the credit will not work a hardship." *Id.*

¶ 38     The trial court found Shane's payments after his children's emancipation were not voluntary overpayments as the "payments for health insurance coverage were made via court order and misrepresentation as to the cost of the coverage," and therefore, the equities demanded reimbursement. The trial court relied on *Tollison*, 208 Ill. App. 3d 17 (1991).

¶ 39     In *Tollison*, overpayments of maintenance and child support were the result of a wage deduction order and were therefore not voluntarily made. *Id.* at 20. The *Tollison* court concluded "fundamental fairness demand[ed] that [Tollison] be given" credit for his involuntary overpayments, even if precedent did not support a credit. *Id.*

¶ 40     We find *Tollison* distinguishable. Unlike in *Tollison*, the support payments here were not made via a wage deduction order. Rather, Shane sent his payments to Lisa directly, meaning he at

10

all times retained full control over the payments. Moreover, Shane should have known that his child support obligations terminated when the children turned 18 years old or graduated from high school. 750 ILCS 5/510(d) (West 2022); see *People v. Lander*, 215 Ill. 2d 577, 588-89 (2005) (citizens are charged with knowledge of the law). Accordingly, we find Shane's post-emancipation payments were voluntary. We do not believe Lisa's misrepresentations made those payments any less voluntary, as they did not relate to the existence of the obligation but rather only its amount. Accordingly, Shane is entitled only to a partial reimbursement of the post-emancipation support he paid, consistent with the equitable calculation set forth above (*supra* ¶ 33).

¶ 41                                    III. CONCLUSION

¶ 42        The judgment of the circuit court of Grundy County is vacated. The cause is remanded for the trial court to recalculate the reimbursement to which Shane is entitled. The trial court is to divide the family plan's monthly premium (using records subpoenaed from Brian's employer) by the number of family members on the plan during each plan year in which Shane made payments beginning in 2015. That amount shall then be multiplied by two to determine the amount attributable to Shane's two children. Lisa must then reimburse Shane the difference between the amount he paid and the amount calculated in accordance with this order.

¶ 43        Vacated and remanded with directions.

¶ 44        JUSTICE HOLDRIDGE, dissenting:

¶ 45        I respectfully dissent and would affirm Judge Sobol's order and his findings and analysis stated therein. I would therefore not vacate and remand as the majority has ordered in this matter.